**James C. DUGAN, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 90–3240.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1991.

Decided March 18, 1992.

A. Robert Kassin, Edwardsville, Ill. (argued), for plaintiff-appellant.

Robert C. Stephens, Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, Ill. (argued), for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and ENGEL, Senior Circuit Judge.[*]

CUDAHY, Circuit Judge.

James Dugan, a disabled Vietnam veteran, received Social Security disability benefits until he was incarcerated for a period of two years. After Dugan's release from incarceration, the Secretary of Health and Human Services reinstated his benefits. Two years following the reinstatement, Dugan was notified that he had been overpaid to the tune of $40,000 because he had engaged in disqualifying employment seven years earlier (in connection with the scheme underlying his conviction). The administrative law judge and the district court rejected Dugan's challenges to the Secretary's retroactive termination of Dugan's disability benefits. Because we hold that the Secretary's termination decision is barred by administrative *res judicata*, we reverse.

### I.

James Dugan suffered injuries in the Vietnam War resulting in the amputation of both legs above the knee. He was first awarded Social Security disability benefits in June 1967. Those benefits continued until November 1973, when Dugan's disability was found to have ceased following a successful trial work period. He reapplied the next year, and the Secretary again granted benefits effective July 1974; this period of benefits lasted until May 1981. On March 27, 1981, Dugan was convicted in the United States District Court for the Southern District of Illinois on RICO and tax evasion charges involving a scheme to distribute marijuana.[1] Dugan's conviction was based on a guilty plea, which he contends was entered as an "*Alford* plea."[2] By letter dated July 24, 1981, the Secretary informed Dugan that his benefits were suspended as of May 1, 1981, when Dugan began serving his sentence. Dugan was released from prison on parole on July 27, 1983. Just over two months later, the Secretary notified him that his benefits were being reinstated effective August 1983.

In May 1985 the Secretary informed Dugan that his entitlement to disability benefits was terminated effective March 31, 1978. On the basis of Dugan's criminal conviction, and in particular his signed plea agreement, the Secretary had determined that in January 1978 Dugan had returned to work as a self-employed person engaged in "substantial gainful activity" and was therefore not entitled to benefits as of that time. The indictment and information charged that Dugan received income of $115,706.80 in a marijuana distribution enterprise during the calendar year 1978. The Secretary concluded that Dugan had been overpaid $36,330.30 in benefits between April 1978 and May 1985. Upon learning of the retroactive termination of his benefits, Dugan reapplied and was granted a new period of disability effective June 1984 (12 months prior to the date of his new application—the maximum period for benefits awarded retroactively). Dugan's new period of disability reduced his overpayment to $28,511.70.

Dugan initially raised several challenges to the Secretary's retroactive termination of benefits. An administrative law judge rejected his challenges and found that his illegal activities in 1978 constituted substantial gainful activity. After the Appeals Council denied review of the ALJ's decision, Dugan sought review in the district

---

[*] The Honorable Albert J. Engel, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

[1] Dugan's convictions were for the offenses of racketeering activity, 18 U.S.C. §§ 1961, 1962(d) & 1963, income tax evasion, 26 U.S.C. § 7201, and failure to file an income tax return, 26 U.S.C. § 7203.

[2] In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that a criminal defendant may voluntarily plead guilty without admitting actual guilt in order to avoid severe punishment.

court. A magistrate recommended that the Secretary's decision be reversed on the alternative grounds that illegal activity is not substantial gainful activity and that the ALJ's finding of substantial gainful activity was not supported by substantial evidence. The district court rejected the magistrate's recommendation and affirmed the decision of the Secretary.

## II.

The Social Security Act provides that we are to review decisions of the Secretary only to determine whether substantial evidence supports the Secretary's findings of fact and whether there has been an error of law. 42 U.S.C. § 405(g); *Stuckey v. Sullivan*, 881 F.2d 506, 508 (7th Cir.1989). Our function is not to reweigh the evidence or to decide whether the claimant was actually disabled. *Id.*

Dugan's initial argument (and the only one we need to consider) is that the Secretary's 1985 termination decision, based on work activity in 1978, is precluded by administrative *res judicata* under the Secretary's regulations.

At the outset, we must consider the Secretary's contention that Dugan waived the *res judicata* issue by failing to raise it below. We disagree with the Secretary. It is noteworthy that Dugan was unrepre-

sented by counsel at each stage of the administrative proceedings. Such proceedings are already less formal than adversarial judicial proceedings. These considerations counsel against an overly strict approach to the waiver of issues on appeal. Our review of the record convinces us that Dugan did adequately raise the issue of *res judicata* several times before the Secretary.[3] Dugan also adequately raised the issue before the district court.[4]

■ The *res judicata* inquiry involves two steps. First, is the Secretary's 1983 decision the type of decision that is subject to administrative *res judicata* in the first place? Second, if it is, has the Secretary met the requirements for reopening such a determination?

The regulations promulgated under the Social Security Act establish a scheme for ensuring finality in the Secretary's determinations. 20 C.F.R. §§ 404.905, 404.987–404.989. It is by now well established that these regulations embody fundamental and familiar principles of *res judicata*. *See Draper v. Sullivan*, 899 F.2d 1127, 1130 (11th Cir.1990); *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391, 1392 (4th Cir.1987).

■ Under 20 C.F.R. § 404.902(b), a decision about "reentitlement to benefits" is an

---

**3.** In a letter to the Secretary dated May 15, 1985, for example, Dugan wrote:

> Why, if I went to jail in 1981, and soon there after had my benefits terminated, was Social Security's full prosecution of me, not done then?
>
> Why do I get a two part prosecution from Social Security?
>
> Why does four years go by and then Social Security drops the other shoe? Or in this case pick up the same shoe and drop it again? Tr. at 272.

At the hearing before the ALJ on December 16, 1986, Dugan stated:

> In 1979 is an arrest date for me and 1979 is correspondence going on between Social Security and the Justice Department, what are we doing in 1986 talking about something that happened in 1978? I have been to jail. I have been released. I have been on parole. I have been off parole. I have had correspondence with Social Security. Now in 1985, last year all of a sudden they are going to look into this case.
>
> ....

> [W]hy when they stopped my benefits in 1980, didn't Social Security boom, boom, boom, figure out what they wanted to do? Why did five years go by before Social Security decides to, to have another go? Tr. at 46–47, 48.

**4.** There is no question that Dugan raised "the *res judicata* issue" in his initial brief in the district court. The Secretary argues, however, that Dugan failed to raise "several important aspects of his *res judicata* argument" until after final judgment. In particular, the Secretary refers to Dugan's contention that a continuing disability investigation of Dugan was underway in 1982—a contention first made in Dugan's reply to the Secretary's response to Dugan's motion for a new trial. This contention was not a new argument for purposes of waiver. Rather, it was an appropriate clarification of issues raised in the Secretary's previous pleading. Further, it was simply offered to buttress the same basic argument made in Dugan's initial brief (and in his briefs on appeal)—that the Secretary's 1985 termination decision is barred by its October 1983 reinstatement of benefits.

"initial determination," which in turn counts as a "determination" under § 404.-901. As a "determination," it is subject to the *res judicata* provisions of §§ 404.987–404.989. The Secretary's 1983 decision to reinstate Dugan's disability benefits would initially appear to qualify as such a reentitlement decision. The Secretary argues, however, that the 1983 decision was merely a resumption of benefits following their suspension during Dugan's incarceration, and did not involve a binding eligibility determination.

In addition to being in some tension with the language of the regulations just quoted, the Secretary's argument is belied by the agency's own operating rules. The Social Security Administration's *Programs Operations Manual System (POMS)* requires the agency to review the cases of individuals whose benefits are terminated during incarceration for a felony to determine whether they continue to qualify for benefits:

> A CDR [Continuing Disability Review] will be conducted in the customary manner taking into account information developed by the DO [District Office] on any newly discovered felony case. Evidence will be secured and evaluated in accordance with DI 00401.636.–00401.-639., and a determination made as to whether disability is continuing.

*POMS* § DI 401.875.B. Even more to the point is the agency's procedure for reinstatement of benefits after incarceration:

> *If otherwise entitled,* an individual whose benefits have been suspended pursuant to the foregoing shall be reinstated effective with the first full month of nonconfinement.... If a possible medical issue exists (e.g., there is an indication of medical improvement or a medical reexam diary is outstanding), process in accordance with DI 00504.050. *If there is work activity, process in accordance with DI 00504.001 [regulations on Continuing Disability].*

*POMS* § DI A202.840.E (emphasis added).

The Secretary does not deny what seems an inevitable interpretation of these provisions—that benefits are to be reinstated following incarceration only if the claimant is determined to be eligible. Further, it appears that in the present case an eligibility review was in fact conducted before Dugan's benefits were reinstated by the Secretary.[5] In any event, because the Secretary's regulations provide for such an eligibility review, we conclude that the Secretary's 1983 reinstatement of Dugan's benefits was a "reentitlement" determination subject to administrative *res judicata.*

Turning to the second stage of the *res judicata* inquiry, we must decide whether the Secretary's 1983 reinstatement was properly reopened under the regulations.

---

5. A Social Security memorandum dated February 25, 1982 states:

> Whereabouts of w/e [wage earner Dugan] If ODO [Office of Disability Operations] doesn't know where w/e is, he is a prisoner at Goodman Center, 4556 Broad River Rd., Columbia SC 29210. He is a convicted felon. MBR says *a CDI [Continuing Disability Investigation] is being conducted.*

Record, Pleadings Doc. 35 (Plaintiff's Exhibit M) (emphasis added). The Secretary's only response to this memorandum is that it is not properly before the court because it was not part of the administrative record. It is true that our review under 42 U.S.C. § 405(g) is generally limited to the pleadings and the administrative record. *Mathews v. Weber,* 423 U.S. 261, 263, 96 S.Ct. 549, 551, 46 L.Ed.2d 483 (1976). But the 1982 memorandum was included in the record on appeal *as part of the pleadings:* it was attached (as Exhibit M) to Dugan's reply to the Secretary's response to Dugan's motion for a new trial. From our reading of the record, it appears that the district court never ruled on any motion to supplement the record with this evidence. But the Secretary apparently never objected to the memorandum's inclusion or moved to strike it from the pleadings. The Secretary's objection to the memorandum's inclusion in the record appears therefore to have been waived.

In any event, we do not resolve this issue definitively because we have no need to rely on the 1982 memorandum for our decision. "We must presume the regularity of administrative action," *Encyclopaedia Britannica, Inc. v. FTC,* 605 F.2d 964, 976 (7th Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1329, 63 L.Ed.2d 770 (1980), and as a general matter "an agency is bound by its own regulations," *Pearce v. Director, Office of Workers' Compensation Programs,* 647 F.2d 716, 726 (7th Cir.1981). Because we conclude that the Secretary's rules and regulations provide for such an eligibility review before reinstatement of benefits, evidence that such a review actually took place here is not required for purposes of *res judicata.*

If it was, then the Secretary's 1985 termination decision is not barred. The Secretary urges three potential grounds for reopening: fraud or similar fault; new and material evidence; and clear error on the face of the evidence. All three grounds are specified in the reopening regulations at 20 C.F.R. §§ 404.987–404.989.

This court, in *dicta*, has questioned whether the regulations even allow for reopenings initiated by the Secretary. Section 404.987(a)[6]

> could be read to make the reopening of a disability case a remedy of the disappointed applicant.... The word "However" in the quoted passage is particularly suggestive that reopening is intended to be for the benefit of the disappointed applicant only—though of course we need not decide in this case whether it must be limited so.

*DeLong v. Heckler,* 771 F.2d 266, 267–68 (7th Cir.1985). The First Circuit has explicitly held, primarily on the basis of due process concerns, that only a claimant may initiate reopening. *McCuin v. Secretary of Health & Human Services,* 817 F.2d 161, 174 (1st Cir.1987). Several other circuits disagree. *See Sheppard v. Sullivan,* 906 F.2d 756, 759–60 (D.C.Cir.1990); *Cieutat v. Bowen,* 824 F.2d 348, 357 (5th Cir.1987); *Fox v. Bowen,* 835 F.2d 1159, 1162–63 (6th Cir.1987); *Munsinger v. Schweiker,* 709 F.2d 1212, 1215 (8th Cir.1983); *Overend v. Sullivan,* 879 F.2d 673, 675 (9th Cir.1989). We note that certain considerations argue in favor of the Secretary's authority to reopen. In particular, several of the "conditions for reopening" contained in § 404.-988 are conditions that one would expect the Secretary to raise (e.g., "fraud or similar fault"). Moreover, nowhere do the applicable regulations expressly preclude reopening initiated by the Secretary, and § 404.987's adoption of the claimant's perspective may well simply be in keeping with the Secretary's directive to promulgate user-friendly regulations. Once again, however, we stop short of a holding on this issue, because we find that the Secretary has failed to meet any of the conditions for reopening.

■ Assuming that the Secretary may reopen a determination, however, the grounds for reopening must be narrowly applied when the Secretary proceeds against a claimant. Because errors can cause considerable hardship, the regulations should be liberally applied in favor of beneficiaries. *McCuin,* 817 F.2d at 174; *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975). The context of the present case also illustrates how the system can be procedurally stacked against a claimant. The Secretary is able to enforce a termination retroactively. *See* 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.1594(g)(4). Here, the 1985 termination was effective seven years earlier—as of 1978. But the claimant, who must reapply for benefits, cannot earn reentitlement to benefits effective more than *12 months* before his new application. *See* 42 U.S.C. § 423(b); 20 C.F.R. § 404.621(a)(1)(i). The resulting gap highlights the special need for finality in the Secretary's determinations. When a claimant is notified in 1985 that his benefits are terminated effective 1978, he is unable to establish his reentitlement before 1984 (even if he met the eligibility criteria in 1979). By ensuring timely and final determinations, administrative *res judicata* can protect the claimant against substantial liability that might result from this scheme.

■ The first of the Secretary's proffered grounds for reopening is "fraud or similar fault." 20 C.F.R. § 404.988(c)(1). The Secretary points out that a recipient of disability benefits has a continuing duty to

---

6. 20 C.F.R. § 404.987 provides in full:

Reopening and revising determinations and decisions.

(a) General. Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised. After we reopen your case, we may revise the earlier determination or decision.

(b) Procedure for reopening and revision. You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination or decision are explained in § 404.988.

report an increase in income or a return to work. 20 C.F.R. § 404.1588(b), (d). The Secretary's regulations state that "similar fault" exists when a claimant "makes an incorrect or incomplete statement ... or [k]nowingly conceals information that is material to the determination." *POMS* § DI 27505.015A.2. We do not think the record provides a basis for a finding of "fraud or similar fault" on the part of Dugan. First, § 404.988(c)(1) of the regulations provides that a determination "may be reopened ... [a]t any time if ... *[i]t was obtained by* fraud or similar fault" (emphasis added). But it is clear that by the time of the Secretary's 1983 determination the agency already possessed the information revealing Dugan's income in 1978. Further, Dugan was notified in 1981 that his benefits were being terminated because of his incarceration for a felony, so he had reason to believe that the agency knew of his criminal activities. Therefore, Dugan's 1983 reentitlement to benefits was not "obtained by fraud or similar fault."

■ The Secretary's "new evidence" argument fails for the same reasons. The regulations allow for reopening a determination within four years for "good cause," 20 C.F.R. § 404.988(b), which is found if, *inter alia*, "[n]ew and material evidence is furnished." 20 C.F.R. § 404.989(a)(1). But the Secretary had the relevant evidence in 1981. A Social Security memorandum dated July 6, 1981 refers to "copies of documents" in the file which establish that Dugan was convicted of a felony in 1978. Tr. at 162. The Secretary asserts that it is not clear when the agency obtained the plea bargain agreement. But the 1981 memorandum includes a docket number and a quotation taken from the indictment attached to the plea agreement. Even on the implausible scenario that the three-page plea agreement itself came into the Secretary's possession later than the other documents, the indictment alone, coupled with the agency's knowledge that Dugan was convicted, provided sufficient evidence of Dugan's 1978 work activity. Therefore, no "new *and* material evidence" was furnished.

■ Finally, a determination can be reopened within four years for good cause if "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a)(3). Courts have applied this provision strictly: it is not a means to reweigh or add to the evidence, but only encompasses errors that are manifest from the original evidence standing alone. *See, e.g., Sheppard v. Sullivan,* 906 F.2d 756, 759 (D.C.Cir.1990); *Gutierrez v. Bowen,* 898 F.2d 307, 311–12 (2d Cir.1990). The Secretary argues that if it had possession of Dugan's plea agreement and other criminal documents, which reveal his substantial income and drug enterprise responsibilities in 1978, then it clearly should have found in 1983 that Dugan had engaged in "substantial gainful activity"; therefore, there was clear error on the face of the evidence in connection with the Secretary's 1983 reentitlement decision. The flaw in the Secretary's argument is that a finding of "substantial gainful activity" is not such a simple matter.

The Social Security Act provides that an individual who engages in substantial gainful activity is not entitled to disability benefits. 42 U.S.C. § 423(f). The Secretary correctly notes that substantial gainful activity can include self-employment and supervisory work. 20 C.F.R. § 404.1573(d). Additionally, under the heading "Evaluation guides if you are self-employed," the regulations indicate that such activity is found where work activity is "clearly worth" $260 per month (for 1978) "when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing." 20 C.F.R. § 1575(a)(2). The same section, however, also states: "We will not consider your income alone since the amount of income you actually receive may depend upon a number of different factors...." 20 C.F.R. § 1575(a). Thus courts have held that the income guidelines in the regulations "create only a presumption, and they do not relieve an ALJ of the duty to develop the record fully and fairly." *Milton v. Schweiker,* 669 F.2d 554, 556 (8th Cir.1982);

*accord Anderson v. Heckler,* 726 F.2d 455, 458 (8th Cir.1984); *Chicager v. Califano,* 574 F.2d 161, 163–64 (3d Cir.1978). As Justice Stevens wrote for this court:

> [I]t is clear that each case must be decided on its own facts, and post-disability employment is not necessarily disqualifying in every case. The question is not simply answered by the fact of [the claimant's] employment or the extent of her earnings. Rather, the answer turns on whether she was disabled within the meaning of the Act notwithstanding the fact that she actually did work.

*Stark v. Weinberger,* 497 F.2d 1092, 1100 (7th Cir.1974).

When courts have allowed the Secretary to reopen determinations that were favorable to claimants on the ground of "clear error on the face of the evidence," it has been to correct a mistake that is manifest from the record and that involves a narrowly defined issue.[7] *See, e.g., Zimmermann v. Heckler,* 774 F.2d 615, 617 (4th Cir.1985) (claimant's failure to file written application); *Munsinger,* 709 F.2d at 1214–16 (claimant's receipt of lump-sum workers' compensation settlement). In contrast, a determination of substantial gainful activity is a broad-based inquiry which turns on a weighing of numerous factors. The receipt of substantial earnings may not be determinative of the issue of substantial gainful activity in several situations, such as where posted earnings do not represent pay for work, *POMS* § DI 504.126.C.4, where work is detrimental to the claimant's health, *POMS* § DI 401.160.E, and where work was performed under special conditions, *POMS* § DI 401.160.B.

The Secretary attempts to find clear error on the face of the evidence merely on the basis of Dugan's plea agreement and indictment. But Dugan was given no opportunity as of 1983 to rebut any presumption created by his earnings or to present evidence in defense of his eligibility. It is certainly possible that the Secretary erred

in 1983 in failing to find substantial gainful activity on Dugan's part in 1978, but error in the Secretary's 1983 decision is simply not clear from the face of the evidence.

### III.

Because none of the grounds for reopening urged by the Secretary applies in this case, the Secretary's 1985 retroactive termination of Dugan's benefits is barred by administrative *res judicata.*

We **REVERSE** the judgment of the district court and **REMAND** with instructions to remand to the Secretary for further proceedings consistent with this opinion.

---

**7.** Given the Social Security Act's broad remedial purpose, this ground for reopening may well be broader when it is the claimant who initiates reopening. Indeed, some courts have held that " 'error on the face of the evidence' occurs when injustice has been done a claimant or there exists manifest error in the record." *Munsinger,* 709 F.2d at 1215 (citing *Lauritzen v. Weinberger,* 514 F.2d 561, 563 (8th Cir.1975)).