**Leslie BELL, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Lester WARD, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Nos. 92 C 3780, 92 C 4257.**

United States District Court, N.D. Illinois, E.D.

March 11, 1993.

Beth A. Alpert, Law Office of Beth A. Alpert, Chicago, IL, for Leslie Bell, plaintiff.

Marcie E. Goldbloom, Frederick J. Daley, Ltd., Chicago, IL, for Lester Ward, plaintiff.

Lori Kathleen Miller, Ramune Rita Kelecius, Asst. U.S. Atty., United States Attorney's Office, Chicago, IL, for Louis Sullivan, defendant.

## MEMORANDUM OPINION ORDER

MAROVICH, District Judge.

This matter is before the court on plaintiff Leslie Bell's ("Bell") complaint for judicial review of a final decision of the defendant, Secretary of Health and Human Services, which found plaintiff not disabled and therefore not eligible for Supplemental Security Income benefits ("SSI"). Plaintiff Lester Ward's ("Ward") case has been joined pursuant to an order entered September 25, 1992. Plaintiffs request that the Secretary's final decision in both cases be reversed and both plaintiffs be found disabled under the meaning of the Social Security Act. For the following reasons, we affirm the Secretary's final decision which found that Leslie Bell was not eligible for SSI because he was not disabled; and affirm the Secretary's final decision which found that Lester Ward was not entitled to DIB and not eligible for SSI because he was not disabled.

*Procedural History*

Bell applied for SSI with a protective filing date of February 23, 1990, alleging disability due to drug addiction and alcoholism. Bell's application was denied originally and upon reconsideration. On August 14, 1991, Bell appeared with counsel at an administrative hearing before Administrative Law Judge ("ALJ") Patricia Deyer Kelly. A medical expert and a friend of Bell also appeared and testified (*id.*). On October 25, 1991, the ALJ decided that Bell was not disabled at step one of the sequential analysis because his drug running constituted substantial gainful activity. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied Bell's request for review. 20 C.F.R. § 416.1481 (1992); *Damato*

*v. Sullivan,* 945 F.2d 982, 988–89 (7th Cir. 1991). Pursuant to 42 U.S.C. §§ 405(h) and 1383(c)(3), Bell initiated this civil action for judicial review of the Secretary decision.

On February 21, 1990, Ward applied for DIB and SSI, alleging that he had been disabled since June 2, 1987, due to substance abuse and a back injury.[1] Ward's applications were denied initially and upon reconsideration. On July 18, 1991, Ward appeared without counsel before ALJ Kelly. The hearing was continued so that Ward could obtain legal representation. On September 6, 1991, Ward appeared with counsel at a hearing before ALJ Kelly, A medical expert also appeared and testified. On January 28, 1992, the ALJ decided that Ward was not disabled at step one of the sequential analysis because his criminal activity—fencing and stealing—constituted substantial gainful activity. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied Ward's request for review. 20 C.F.R. §§ 404.981, 416.1481 (1992); *Damato,* 945 F.2d at 982. Pursuant to 42 U.S.C. § 405(g), Ward initiated this civil action for judicial review of the Secretary decision.

*Statement of Facts*

Bell was born on April 11, 1938. He was fifty-three years old when the ALJ rendered her decision. Bell has an eighth or tenth grade education and can read and write. Bell does not have a recent history of legal employment. In the past, Bell performed odd jobs. Bell receives $160 in general assistance each month. He pays approximately $150 per month in rent.

In April 1990, Bell told a consulting psychologist that he used heroin four to five times each day. Bell stated that he left his apartment about 9:00 a.m. to "hustle". He further stated that he shoplifted in order to support his drug habit. Bell returned home about 9:00 p.m. Bell also told the psychologist that although he had been arrested many times for disorderly conduct, he had never been arrested for assault, burglary, or robbery, and that he had never been sentenced to prison.

In May 1990, Bell told a consulting psychiatrist that he used heroin daily and that he abused other drugs. He supported "his habits by stealing or hustling for money and has been arrested numerous times for theft and armed robbery." Bell told the consulting psychiatrist, however, that he had not spent a significant amount of time in jail. Bell stated that he rose early in the morning in order "to hustle and steal for money to obtain drugs." Bell spent his entire day getting high and hustling.

Ward was born on December 21, 1951. He was thirty-nine years old when his insured status expired on September 30, 1991 and forty years old when the ALJ rendered her decision. Ward has an eleventh grade education and can read and write. Ward receives food stamps, pays $50 per month in rent, and receives general assistance. Ward has not worked at a legal job since June 1987 when he was a day laborer.

In July 1989, Ward told the SSA that he used alcohol, heroin, and cocaine as often as he was able to obtain those drugs. In September 1989, Ward reported to the SSA that he used drugs daily. In March 1990, Ward stated that he shared drugs with others and would steal to obtain money to buy drugs. In April 1990, Ward told a consulting physician that he abused drugs on a daily basis. In August 1990, Ward stated that he still heavily abused drugs. At the September 1991 hearing, Ward testified that he did not know how many times he had been arrested, but asserted that he had yet to be convicted. He was last jailed in May 1991; he had stolen a car. Criminal charges were still pending against him. Ward stated that he drank alcohol daily. He also used tranquilizers, heroin, and cocaine. Ward admitted that he used at least $60–80 of drugs per day. Ward stated that in order to pay for these drugs, he sold "dry goods for wholesale stores." For example, he illegally obtained merchandise such as jewelry and then sold the merchandise to others at a profit. In

---

1. Ward previously applied for SSI on April 21, 1989. This application was denied initially and upon reconsideration and not pursued further.

other words, Ward engaged in criminal activity in order to pay for drugs. Ward's criminal activity included burglary, theft, and shoplifting in addition to fencing. Ward has been a criminal for many years. Ward stated that he sometimes worked all day in order to have enough money to purchase drugs.

## DISCUSSION

In reviewing the ALJ's decision, this court's function is not to reweigh the evidence or to decide whether the claimant is actually disabled. *See Dugan v. Sullivan,* 957 F.2d 1384, 1387 (7th Cir.1992). The Social Security Act ("Act") states that the district court's review of the ALJ's decision is limited to determining whether substantial evidence supports the Secretary's findings of fact and to determine whether the Secretary applied the proper law. 42 U.S.C. § 405(g); *Dugan,* 957 F.2d at 1387. Substantial evidence is defined as evidence which a reasonable person might accept as adequate to support a conclusion. *See, e.g., Ray v. Bowen,* 843 F.2d 998, 1001 (7th Cir.1988).

■ The first step in evaluating eligibility for disability benefits is to determine whether the claimant was engaging in substantial gainful activity. "Substantial" activity "involves doing significant mental or physical activities." 20 C.F.R. § 404.1572(a). Activity is "gainful" if "it is the kind of work done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). Average monthly earnings of over $500 in years after 1990, or $300 in years before 1990, create the presumption that the claimant engaged in substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(vi), (vii). This presumption, however, is a rebuttable one. *See Dugan,* 957 F.2d at 1390.

The ALJ concluded that Bell and Ward were not disabled under the meaning of the Act and thus, did not satisfy the first step of the sequential analysis. This conclusion was based on two findings: (1) Bell and Ward each, through their illegal activities, earned well over the $500 per month earnings level corresponding to the presumption that work activity is substantial gainful activity. *See* 20 C.F.R. § 416.974(b)(2)(vii) (1992); and (2) performing the illegal activities required sig-

nificant mental and physical activity. *See* 20 C.F.R. § 416.972 (1992). The ALJ's conclusion was based on her finding that illegal activity can qualify as substantial gainful activity for purposes of the Act. We agree.

The ALJ's decision that Bell and Ward engaged in substantial gainful activity was based on her determination that illegal activity can be considered substantial gainful activity. There are no statutory provisions or regulations which impose a requirement that substantial gainful activity must be lawful. *Hart v. Sullivan,* No. C–92–1172–SBA, 1992 WL 438018 (N.D.Cal. Dec. 28, 1992); *Jones v. Sullivan,* 804 F.Supp. 1045, 1047 (N.D.Ill. 1992) (Holderman, J.). Moreover, the tax code requires that income obtained through illegal activity be included in calculations. *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). This reflects the understanding that criminal activity can involve "work" rising to the level of a trade or business for purposes of the code. *Id.* This conclusion comports with other District Court decisions like the recent determination in *Hart* that illegal activities are not excluded from the Act's definition of substantial gainful activity. *See also Jones,* 804 F.Supp. at 1047 (affirming ALJ's denial of benefits based on claimant's admitted ability to engage in criminal activity to support his alcohol and drug habits).

*The ALJ's Conclusion That Bell and Ward Engaged in Substantial Gainful Activity is Supported by Substantial Evidence.*

■ The ALJ calculated that Bell and Ward each earned more than the $500 per month minimum earnings level through illegal activities. Specifically, Bell admitted to shoplifting, stealing, hustling, committing armed robbery and stealing checks, and also working as a drug runner so that he could support his drug habit. (Bell's Tr. 26–27, 30). Ward admitted to supporting his drug habit by reselling illegally obtained merchandise, burglary, theft and shoplifting.

The ALJ's calculations, in each instance, were based on the value of the drugs. For Bell's monthly income, the ALJ determined the value of the drugs Bell received as compensation for acting as the middle-man be-

tween drug dealers and buyers and multiplied that number by the frequency with which Bell admitted receiving the drugs.[2] The ALJ found that Bell's drug running generated in-kind income of between $840 and $1,120 per month. The ALJ calculated Ward's monthly income by multiplying the value of the drugs that Ward stated he purchased by the frequency with which he admitted buying the drugs. (Ward's Tr. 13). Ward admitted that he used between $60–80 of drugs per day (Ward's Tr. 47–48) and the ALJ estimated that he earned $1,800 per month. Thus, the ALJ's findings place both Bell and Ward well over the $500 minimum earnings level necessary to establish the presumption of substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(vi), (vii).

Furthermore, the ALJ's finding that Bell and Ward's illegal activities required significant physical and mental capabilities is supported by substantial evidence. Bell and Ward each made statements indicating the seriousness with which each takes the responsibilities attendant to supporting their drug habits. Bell said he rose early in the morning "to hustle and steal for money to obtain drugs." (Bell's Tr. 124). Similarly, Ward said that he sometimes worked all day so that he would have enough money to purchase drugs. (Ward's Tr. 49, 54). The regularity of their routines suggests not only a systematic and determined way of living, but also reflects planning and perseverance. These acts reflect the requisite mental capacity necessary to overcome the presumption. Through their actions, Bell and Ward evidence an initiative similar to that of any other hard-working person and their success at sustaining their drug use is proof. Bell and Ward each had the physical and mental capacity to perform these illegal activities in order to successfully realize their objective.

The ALJ's conclusion that Bell and Ward's illegal activities are substantial is supported

by the initiative displayed by each to achieve his objective. The ALJ's conclusion that illegal activity is gainful is also correct because it is the kind of work usually done for pay or profit. *See Hart,* No. C–92–1172.

### Conclusion

For the reasons stated above, we deny Bell and Ward's motion for summary judgment and affirm the ALJ's denial of Social Security benefits.

---

2. Bell claims the ALJ made an error of law by using the value of drugs to calculate Bell's monthly income. Bell, relying on 20 C.F.R. 426.1102, argues that drugs cannot be considered "in-kind" support. We disagree and instead, follow the reasoning of the United States District Court for the Northern District of California when they rejected a similar argument in *Hart,* No. C–92–1172, 1992 WL 438018 (N.D.Cal.

Dec. 28, 1992). There, the court said, "[t]he amount of cash or its equivalent actually received has no relevance to an inquiry regarding substantial gainful activity. The issue is whether 'it is the *kind of work usually done for pay or profit,* whether or not a profit is realized'". *Id.* (citing, 20 C.F.R. § 416.972(b)). We believe working as a drug runner is the kind of work usually done for pay or profit.