**Michael MOYNIHAN, Plaintiff,**

v.

**Donna E. SHALALA,[1] Secretary, Department of Health and Human Services, Defendant.**

**No. L92–29.**

United States District Court, N.D. Indiana, Hammond Division.

June 28, 1993.

---

11. W.R. Grace cites no authority for its position in its motion for new trial.

1. Donna E. Shalala succeeded Louis W. Sullivan, M.D., as Secretary of Health and Human Services on January 22, 1993. Therefore, pursuant to

Fed.R.Civ.P. 25(d)(1), Donna E. Shalala should be substituted for Louis W. Sullivan, M.D., as the defendant in this suit. *See also,* 42 U.S.C. § 405(g).

**1068**

Robert L. Glasser, Indianapolis, IN, for plaintiff.

Clifford D. Johnson, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Michael Moynihan ("Moynihan") appeals from a final judgment of the Secretary of Health and Human Services ("Secretary") denying his application for Social Security Disability Insurance Benefits ("DIB") pursuant to §§ 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. Jurisdiction over Mr. Moynihan's petition for judicial review is conferred upon this court by 42 U.S.C. § 405(g).

### A. Procedural History

Mr. Moynihan filed an application for DIB alleging arthritis, obesity and alcoholism on October 30, 1986 (R. 433–436). In that application, he stated that he had been denied benefits in 1984. After his October 30, 1986, petition was denied initially and upon reconsideration, Mr. Moynihan requested a hearing before an administrative law judge ("ALJ") on October 1, 1987 (R. 446).

Pursuant to that request, ALJ Dale B. McLaughlin held a hearing on December 10, 1987 (R. 67–123). In a decision issued March 15, 1988, ALJ McLaughlin found that Mr. Moynihan had insured status under the Act through March 31, 1987. Furthermore, ALJ McLaughlin concluded that Moynihan was not disabled, because he retained the residual functional capacity ("RFC") to perform the full range of sedentary work (R. 53–60).

Upon Mr. Moynihan's request for a review, the Appeals Council reviewed and remanded the case to the ALJ on September 19, 1988. The order remanding instructed the ALJ to consider whether Moynihan met the insured status requirement for DIB beyond March 31, 1987, and to obtain vocational expert ("VE") testimony to resolve issues relating to the plaintiff's nonexertional limitations (R. 47–49).

ALJ McLaughlin held a second hearing on February 14, 1989, at which Mr. Moynihan, his attorney, and a VE were present (R. 133–189). Based upon that hearing, the ALJ issued a decision on May 22, 1989, concluding that Moynihan met the insured requirements of the Act through March 31, 1988. However, the ALJ again found Moynihan not disabled, because he was capable of performing the full range of light work (R. 38–44).

On January 30, 1991, pursuant to a request for review filed by Mr. Moynihan, the Appeals Council remanded this case to another ALJ, Ronald J. Vitello. The order remanding the case instructed ALJ Vitello to:

1) determine Moynihan's last insured date which would depend upon a decision of whether the claimant received self-employment earnings in a *bona fide* trade or business, and

2) determine the periods during which Moynihan worked subsequent to the alleged onset date, and

3) "obtain any additional treating source reports," and

4) "take testimony from a medical advisor as to the nature and severity of the claimant's impairments and the limitations they impose on his ability to perform work-related activities," and

5) evaluate claimant's alcohol problem and prepare a Psychiatric Review Technique form.

(R. 30–32).

ALJ Vitello held an administrative hearing on September 10, 1990, at which plaintiff Moynihan testified (R. 190–217). On May 7, 1991, ALJ Vitello held a supplemental hearing at which a medical adviser and a VE testified (R. 218–235).

On June 20, 1991, ALJ Vitello issued his written determination that Moynihan's last insured date was March 31, 1988. Specifically, Vitello wrote,

> [a]s the record regarding his [Moynihan's] quarters of coverage now exists, without crediting him [Moynihan] for the self-employment earnings in 1985, he [Moynihan] last meets the special earnings requirement of Title II of the Social Security Act on March 31, 1988.

(R. 18). ALJ Vitello further determined that Mr. Moynihan "met the disability insured status requirements of the Act on June 25, 1986, the date the claimant [Moynihan] stated he became unable to work" (R. 19). Thus, the June 20, 1991, decision concluded

> that, based on the application filed on October 30, 1986, the claimant is entitled to a period of disability commencing June 25, 1986, and to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act.

(R. 20).

The Appeals Council, on its own motion, pursuant to 20 C.F.R. 404.969, decided to review ALJ Vitello's June 20, 1991, decision granting DIB. Based upon its review of the evidence, the Appeals Council decided that Moynihan

last met the special disability insured status requirements on March 31, 1982, that the claimant was not insured as of his alleged onset date of June 25, 1986, and that the claimant [Moynihan] is not entitled to a period of disability and to disability insurance benefits.

(R. 8). Critical to this final decision was the Appeals Council's determination that the monies received by Moynihan from 1983 through 1986 for the sale of his blood plasma, the "management" of his father's farm, and a promotional prize of $200.00 were not received in the course of a trade or business. Thus, they did not constitute self-employment earnings and Moynihan was found ineligible for DIB (R. 12).

The Appeals Council's decision stands as the final determination of the Secretary. Pursuant to 42 U.S.C. § 405(g), Moynihan now seeks judicial review of the Secretary's final determination denying him DIB.

### B. Standard of Review

The Act itself provides the pertinent standard of review: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). The Appeals Council's finding that Mr. Moynihan is not disabled must be upheld if it is supported by substantial evidence. *Pitts v. Sullivan,* 923 F.2d 561, 564 (7th Cir.1991); *Herr v. Sullivan,* 912 F.2d 178, 182 (7th Cir.1990). This court will not reweigh the evidence presented at the administrative hearing, *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 388 (7th Cir.1992), nor will it determine whether Mr. Moynihan actually was disabled. *Id.; Stuckey v. Sullivan,* 881 F.2d 506, 508 (7th Cir.1989). Absent an error of law by the Secretary, this court must affirm her decision if there is substantial evidence to support it. *Herr,* 912 F.2d at 180; *Kelley v. Sullivan,* 890 F.2d 961, 965 (7th Cir.1989). Substantial evidence is that quantum of relevant evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Howell v. Sullivan,* 950 F.2d 343, 347 (7th Cir.1991). It may be less than a preponderance of the evidence. *See, Consolo v.*

*Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Young,* 957 F.2d at 389.

## C. Description of the Secretary's Decision

██ To be eligible for DIB, a claimant must establish both his disability and his insured status. The Act defines "disabled" as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A).

Pursuant to statutory authority, 42 U.S.C. § 423(d)(4), the Secretary has promulgated regulations for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f) (1992). The Secretary employs a five-step process to determine whether a claimant is eligible for benefits within the meaning of the Act. *Campbell v. Shalala,* 988 F.2d 741 (7th Cir.1993). The Seventh Circuit has described this sequential inquiry.

The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Schroeter v. Sullivan,* 977 F.2d 391, 393 (7th Cir. 1992). Once the claimant has satisfied Steps One and Two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984).

*Campbell,* 988 F.2d at 743; *see also Young,* 957 F.2d at 389.

Applying the five-step procedure in this case, ALJ Vitello decided that:

1. The claimant met the disability insured status requirements of the Act on June 25, 1986, the date the claimant stated he became unable to work.

2. The claimant has not engaged in substantial gainful activity since June 25, 1986.

3. The medical evidence establishes that the claimant has severe bilateral knee problems, is status post bilateral patellectomy and has sensory neuropathy in his feet.

4. The severity of the claimant's impairment equals the requirements of Section 1.03 and/or 11.14 Appendix 1, Subpart P, Regulations No. 4, and has precluded him from working for at least 12 continuous months (20 CFR 404.1526).

5. The claimant has been under a "disability," as defined in the Social Security Act, since June 25, 1986 (20 CFR 404.-1520(d)).

(R. 19–20).

On review, the Appeals Council focused on Mr. Moynihan's insured status. "To become entitled to disability insurance benefits, you must have disability insured status in the first full month that you are disabled...." 20 C.F.R. § 404.131(b)(1) (1992). Pursuant to its review of Mr. Moynihan's activities and earnings during the years 1982 through 1986, the Appeals Council entered the following findings:

1. The claimant's sale of his blood plasma did not constitute a *bona fide* trade or business.

2. The claimant's "management" of his father's farm did not constitute a *bona fide* trade or business.

3. The claimant's handling of the sale of a piece of real property for his father did not constitute a *bona fide* trade or business.

4. The claimant's receipt of a promotional prize of $200 did not constitute a *bona fide* trade or business.

5. The claimant received no self-employment income in 1983 through 1986.

6. The claimant received wages of $610.94 in 1985 and $6,702.92 in 1986.

7. The last date on which the claimant met the special disability insured status requirements was March 31, 1982.

8. The claimant is not insured as of his alleged onset date of June 25, 1986.

9. The claimant is not entitled to a period of disability or to disability insurance benefits.

(R. 12).

In so finding, the Secretary (through the ALJ and the Appeals Council) renders Mr. Moynihan ineligible to receive DIB under §§ 216(i) and 223 of the Act.

### D. Issue Presented on Review

The issue raised for this court's consideration is whether substantial evidence supports the ALJ's conclusion that Mr. Moynihan was no longer under an "insured status" on his alleged onset date of June 25, 1986. To resolve the issue, this court must answer whether the plaintiff's sale of his blood plasma and the "management" of his father's farm equated to his engaging in a trade or business.[2] This court must affirm the Secretary's decision "if the record contains substantial evidence to support the findings and there has been no error of law." *Strunk v. Heckler*, 732 F.2d 1357, 1359 (7th Cir.1984).

### E. Discussion

Under the Act, to have "insured status," a claimant must show that he had at least twenty quarters of coverage during the forty-quarter period ending with the quarter in which the period of disability begins. 20 C.F.R. §§ 404.110, 404.130(b) (1992). A person is credited with quarters of coverage based on the wages he is paid and the self-employment income he earns. 20 C.F.R. §§ 404.101(b), 404.143 (1992).

The quarters, each representing a three-month period of time, relevant to Mr. Moynihan's claim are those falling in the years 1982 through 1986. In 1982, the amount of earnings needed for a quarter of coverage was $340. In 1983, the amount of earnings needed for a quarter of coverage was $370. In 1984, the amount of earnings needed for a quarter of coverage was $390. In 1985, the amount of earnings needed for a quarter of coverage was $410. In 1986, the amount of earnings needed for a quarter of coverage was $440. 20 C.F.R. app. pt. 404, subpt. B (1992).

To demonstrate that he met the "insured status" requirements during these years, Mr. Moynihan faces two hurdles. First, he must establish that he was engaged in a trade or business. 20 C.F.R. §§ 404.1065 and 404.-1066 (1992). Second, he must show "net earnings" at least equal to the threshold amounts, as set out in the preceding paragraph, of the minimum required number of quarters for which he must be credited with coverage. 20 C.F.R. § 404.1080(a)(1) (1992) (defining "net earnings from self-employment" for social security purposes as the gross income from any trade or business less deductions attributed to that trade or business).

For 1983, the plaintiff reported self-employment income of $1,550 ($1,050 from the sale of real estate for his father and $500 from "managing" his father's farm) (R. 598–604). For 1984, the plaintiff reported self-employment income of $1,566 ($896 from the sale of blood plasma, $670 from "managing" his father's farm) (R. 592–597). For 1985, the plaintiff reported self-employment income of $1,578 ($200 from promotional prize, $828 from the sale of blood plasma, and $550 for "managing" his father's farm). In 1985, Mr. Moynihan also earned $611 in wages from Triple T Inns Of Vincennes, Inc. (R. 588–591). The Appeals Council credited Mr. Moynihan for a quarter of coverage in 1985 based upon the $611 in earnings from wages (R. 11). For 1986, the plaintiff reported self-employment income of $725 ($225 from sale of blood plasma and $500 for "managing" his father's farm). In 1986, Mr. Moynihan also earned $6,703 in wages from Bioanalytical Systems, Inc. (R. 578–583). The Appeals Council credited Mr. Moynihan for four quarters of coverage in 1986 based upon the $6,703 in earnings from wages (R. 11). However, in no year was credit given for the earnings reported from the sale of blood

---

**2.** The plaintiff does not dispute the Appeals Council's finding that the $200 promotional prize did not constitute earnings from a *bona fide* trade or business.

plasma or from the "managing" of his father's farm (R. 11).

 The plaintiff alleges that he performed the following activities in "managing" his parents' farm [3]: firing one sharecropper and hiring another sometime in the late 1970s (R. 195); accompanying his parents to meetings with the sharecroppers two times per year (R. 93–94); driving for his parents and assisting with other "things" (R. 94); making sure that the sharecroppers accomplished the work they agreed to complete for his parents (R. 89); leasing the house on the farmland to tenants (R. 93); and assisting his parents annually with the business requirements of participating in federal programs for farmland (R. 94). Mr. Moynihan explained that he and his parents agreed that, in exchange for his services at the farm, his parents would pay him 10% of the net annual income they realized from the farm's operations (R. 195).

The Appeals Council reasoned that the activities performed by the plaintiff for the benefit of his parents' farming operation did not amount to a job, because Mr. Moynihan

> would [not] have been liable for damages if the job were not completed. The claimant [Moynihan] did not work for a number of firms at the same time, or hold himself out to the general public as available to perform services. The claimant did not have any expenses (none were reported on the Schedule C's for the remuneration in question), and he did not use his own equipment and/or workplace. Further, none of these activities were in the nature of being a regular occupation or calling.

(R. 11). The Appeals Council concluded "that the services were in the nature of maintaining his [Moynihan's] father's investment in the farm, rather than actually managing the farm or performing any type of work" (R. 11).

Mr. Moynihan bears the burden of showing an absence of "substantial evidence" to support the Secretary's decision. *See*, 42 U.S.C. § 405(g); *Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir.1991). This court begins its review of the Secretary's decision

with a discussion of what constitutes a trade or business.

 A determination of what constitutes a trade or business for purposes of establishing self-employment income in the context of social security determinations rests upon four basic elements.

> [A] reasonable basis exists for a finding that a particular activity constitutes a trade or business if the following factors have been substantially met:
>
> 1. The activity was initiated and conducted in good faith with the intention of making a profit or producing income.
>
> 2. The activity has been regularly carried on, i.e., there has been a continuity of operations, a constant repetition of transactions, or a regularity of activities.
>
> 3. The activity was engaged in as a regular occupation or calling.
>
> 4. The individual held himself out to others as being engaged in the selling of goods or services.

Social Security Ruling 64–40. An analysis using these criteria should be conducted pursuant to SSR 64–40's caveat that "[n]o single factor is controlling and each individual case must be decided on its own merits with due consideration being given to the entire factual situation." *Id.*

This is very similar to the standards imposed upon taxpayers seeking to establish that they have engaged in a trade or business for purposes of income tax calculations. Generally, the test for whether a person is engaged in a trade or business, thus able to deduct the expenses from that trade or business, "is whether the taxpayer's primary purpose and intention in engaging in the activity is to make a profit." *Zell v. C.I.R.*, 763 F.2d 1139, 1142 (10th Cir.1985).

> In addition, even profit-motivated activity does not constitute a trade or business unless it has been "extensive activity over a substantial period of time during which

---

**3.** The plaintiff characterized the farm as a relatively small (106 acres) grain farm (R. 195).

the taxpayer holds himself out as selling goods or services."

*Id.* n. 2 (citations omitted).

None of these require that a profit be realized. Instead the only issue is whether the activity was entered into with the intention of making a profit. This is wholly consistent with the approach taken by the regulations to determine whether an applicant for DIB has engaged in "substantial gainful activity."

"Substantial" activity "involves doing significant mental or physical activities." 20 C.F.R. § 404.1572(a). Activity is "gainful" if "it is the kind of work done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). Average monthly earnings of over $500 in years after 1990, or $300 in years before 1990, create the presumption that the claimant engaged in substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(vi), (vii). This presumption, however, is a rebuttable one. *See Dugan [v. Sullivan],* 957 F.2d [1384] at 1390 [ (7th Cir.1992) ].

*Bell v. Sullivan,* 817 F.Supp. 719, 722 (N.D.Ill.1993). By way of footnote, the *Bell* court noted that

"[t]he amount of cash or its equivalent actually received has no relevance to an inquiry regarding substantial gainful activity. The issue is whether 'it is the *kind of work usually done for pay or profit,* whether or a not a profit is realized.'"

*Id.* at 723 n. 2 (quoting *Hart v. Sullivan,* 824 F.Supp. 903 (N.D.Cal.1992) (quoting 20 C.F.R. § 416.972(b))) (emphasis in original).

Indeed, it would make no sense if the tests for "substantial gainful activity" and for "trade or business" did not overlap significantly. In recognition of this, some opinions have in fact used the terms almost interchangeably. In *Bell* for instance, District Judge Marovich wrote:

There are no statutory provisions or regulations which impose a requirement that substantial gainful activity must be lawful. Moreover, the tax code requires that income obtained through illegal activity be

included in calculations. This reflects the understanding that criminal activity can involve "work" rising to the level of a trade or business for purposes of the code. This conclusion comports with other District Court decisions like the recent determination in *Hart* that illegal activities are not excluded from the Act's definition of substantial gainful activity.

*Bell,* 817 F.Supp. at 722 (citations omitted).

In *Bell,* the court found that the plaintiff had engaged in substantial activity even though the activity was illegal. The decision rested, in part, on the fact that the plaintiff "hustled" daily—stealing, shoplifting, running drugs—to support his drug habit. While Moynihan arguably performed services for his parents for which he may well have been compensated, there is no evidence that his activities were regular or repeated. Furthermore, no evidence indicates that Mr. Moynihan held himself out as being engaged in the sale of goods or services. Thus, Moynihan's activities fall short of constituting a trade or business under either Social Security Ruling 64–40 or *Bell.*

■ Nevertheless, Moynihan argues that his income tax returns and his payment of self-employment tax establish that he engaged in a trade or business for which he should receive quarters-of-coverage credit. While not specifically stated, the argument asserted by Moynihan seems to be that one segment of the federal government—the Internal Revenue Service ("IRS")—accepted his tax forms and tax payments corresponding to his reported self-employment earnings, therefore, another segment of the government should also recognize these earnings as being derived from a self-employed trade. However, it does not follow logically that because the IRS accepted and processed Moynihan's tax returns, there was a governmental determination as to the truth of the contents of the tax returns.[4] Therefore, this court rejects any suggestion that Mr. Moynihan's filing of his tax returns binds this court to conclude that the contents of those tax

4. Nothing in this opinion should be construed to suggest that this court believes that Mr. Moyni-

han has failed to properly comply with the obligations of the Internal Revenue Code.

returns are true, thus, foreclosing a separate evaluation by the Secretary.

Here, the Appeals Council could reasonably have been skeptical about the information contained in Mr. Moynihan's tax returns. Mr. Moynihan never filed a 1983 tax return until 1987. On April 3, 1987, Michael J. Moynihan wrote the following to the IRS:

> I was not aware I owed a tax *for* 1983 untill [sic] I got some tax advice when I completed my 1986 tax return.

> I now know it is to my advantage to pay this tax. I'll need some kind of protection for the future. At this point all I might have is Social Security.

(R. 605). Based upon a thorough review of the record in this case, currently numbering 678 pages, this court finds that the Secretary's findings regarding Mr. Moynihan's activities on behalf of his parents' farm are supported by substantial evidence.

██ The Appeals Council also considered and rejected the idea that Mr. Moynihan's sale of his blood plasma constituted a trade or business. Mr. Moynihan argues that this determination is not supported by substantial evidence, however, he offers little support for his position. Essentially, his only argument is that donating blood plasma constitutes engaging in a trade or business, because advertisements for blood plasma donors appear in the "want ad" section of the newspaper. He provides no legal precedent to support this argument, and he ignores completely the objective criteria of SSR 64–40.

The Secretary, on the other hand, has directed this court to a case involving the sale of blood plasma where such activity was recognized as a trade or business. In *Green v. Commissioner of Internal Revenue*, 74 T.C. 1229, 1980 WL 4486 (1980), the taxpayer, Green, engaged in activities related to the sale of her blood plasma. However, the facts here differ significantly from the facts in *Green*.

In *Green*, the taxpayer had a rare blood type and sold her blood plasma as her primary source of funds. *Id.* at 1230. At the time of the *Green* decision, the taxpayer "had been selling her blood plasma on a regular basis continually for over 7 years." *Id.* at 1235. In one twelve-month period, she made 95 trips to the laboratory to make donations. *Id.* at 1231. She claimed business deductions for special high protein foods, diet supplements and drugs to maintain the quality of her blood plasma, and the expense of her travel to and from the laboratory. *Id.* at 1236–1237. In one year, the taxpayer reported over $7,000 in gross receipts from the sale of her blood plasma. *Id.* at 1230.

In contrast, plaintiff Moynihan offers no evidence that he has a rare, valuable blood type. His annual receipts from the sale of blood plasma were always less than $1,000. While he reports receipts from the sale of blood plasma in three different years, he offers no evidence regarding the number of donations made to demonstrate that this was in any way a regular activity. He claimed no business deductions for any expenses related to his donor activities, and there is no evidence that he changed his life in any way to accommodate his donor activities other than appearing at the laboratory. In sum, Mr. Moynihan's activities simply do not compare to those of taxpayer Green's activities nor do they rise to the level of activity required by Social Security Ruling 64–40 or *Bell* to be recognized as a trade or business.

### F. Conclusion

Having thoroughly reviewed the record in this case, the court concludes that there was substantial evidence upon which the Secretary could determine that Mr. Moynihan did not meet the insured status requirement. Thus, for the reasons described herein, Mr. Moynihan's motion for summary judgment is **DENIED,** and the Secretary's final decision is **AFFIRMED.**