**Kelvin W. SMITH, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant.**

**No. 99 C 1564.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 24, 1999.

Robert G. White, Chicago, IL, for Plaintiff.

Tony J. Masciopinto, Assistant U.S. Attorney, Grace M. Kim, Assistant Regional Counsel, Social Security Administration, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiff Kelvin Smith ("Smith" or "Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying Smith's claim for Supplemental Security Income ("SSI") disability benefits under the Social Security Act, 42 U.S.C. § 1381 *et seq.* The Administrative Law Judge ("ALJ") found that based on Smith's engagement in substantial gainful activity, he was not disabled. Therefore, Smith was not eligible for SSI. The Commissioner's Appeals Council denied Smith's request for review. Smith subsequently filed his complaint for judicial review in this Court.

This matter comes before the Court on cross motions for summary judgement. The issue presented is whether substantial evidence in the record supports the ALJ's finding that Smith was not disabled. For the reasons set forth below, the Court grants Defendant's motion for summary judgement, denies Smith's motion for summary judgment, and affirms the ALJ's decision.

## I. FACTUAL BACKGROUND

### A. Testimony

#### 1. Smith

The record reflects very little formal testimony from Smith. (*see* A.R. at 26–36.) Smith was present at only the first hearing before the ALJ where he was advised of his right to representation and questioned briefly as to the completeness of his medical records. (A.R. at 26.) Smith smelled of alcohol at his first hearing, (A.R. at 92), and admitted that he had consumed "a half a can of beer" that day. (A.R. at 32–34.) Following the first hearing, the ALJ rescheduled the hearing on three separate occasions to accommodate Smith's absence. (A.R. at 28, 94, 40.) Plaintiff was given notice of each hearing. (A.R. at 80, 86, 91, 93, 95.) Although Smith failed to appear at the scheduled hearings, the ALJ extended an invitation to his representative to submit any additional information or testimony on behalf of Smith, and left the record open for 30 days following the June 4, 1997 hearing. (A.R. at 65–67.) The ALJ left the option to pursue an additional hearing open to Smith's representative, stating, "you can decide later if you want to—if you think it would be helpful to have testimony." (A.R. at 66.) Smith's representative responded, "[I] feel comfortable without having to have my client testify." *Id.* No additional testimony was submitted.

Smith was 36 years old at the time of the ALJ's decision. (A.R. at 149.) He has a tenth grade education, yet is functionally illiterate. (A.R. at 26, 197.) Smith filed an application for SSI on March 4, 1996, claiming to have been disabled since January 1, 1989, as a result of a "mental condition, drug and alcohol addiction, diabetes, and a gunshot wound to his leg." (A.R. at 116–117.) Smith recounted his problems with illegal drugs and alcohol, writing, "I smoke about five bags of cocaine daily. I drink about three or four fifths of wine daily." (A.R. at 116.) Smith has a history of drug and alcohol addiction dating back to fourteen or fifteen years of age. (A.R. at 161, 169–170.) Smith was unable to complete a rehabilitation program in 1994 because he was incarcerated. (A.R. at 225–226.) Smith has not maintained legal employment since 1980–1981, when he was employed as a truck loader at a cup factory and a book packer at a packing company. (A.R. at 120–121.)

Smith has been living with family both in Chicago and Elgin. (A.R. at 134, 138–139, 192.) Smith has sustained a serious drug and alcohol addiction by begging, stealing, burglarizing, (A.R. at 169–170, 181–182), and by using $154.00 per month of state and local assistance, (A.R. at 101).

#### 2. Dr. Stephanie Livingston

Dr. Stephanie Livingston ("Livingston"), the Medical Expert, testified before the ALJ at the June 4, 1997 hearing. (A.R. at

45.) Livingston stated that Smith meets the listings for affective disorder including mental retardation as well as substance addiction. (A.R. at 54–55.) Livingston testified that Smith's social problems interfered with his ability to sustain work. (A.R. at 55.) Livingston also indicated that the anti-social characteristics reported on several of Smith's medical records might suggest that he is doing something illegal to obtain drugs. (A.R. at 57–59.)

## B. Additional Medical Evidence

Smith underwent numerous examinations by physicians associated with the Department of Disability Services ("DDS") as well as independent physicians. The relevant medical records are as follows:

### 1. Department of Disability Services Consultations

On April 10, 1996, Dr. Rubeena Mian performed a comprehensive psychiatric evaluation of Smith. (A.R. at 169.) In the course of the examination, Smith advised Dr. Mian that he spent $20.00 to $30.00 per day on alcohol and $50.00 per day on drugs, financing this habit through begging and stealing. *Id.* Smith indicated that he has been drinking on a daily basis since the age of seventeen, and using cocaine daily since the age of nineteen. *Id.* The doctor noted Smith's complaints of visual and auditory hallucinations, but attributed the hallucinations to symptoms of withdrawal. *Id.* Dr. Mian concluded that Smith would be incapable of handling funds in his own interest, and diagnosed him with a physiological dependence to both alcohol and cocaine. *Id.*

Dr. Carmen Oliveras next provided an Internal Medicine Consultative Examination of Smith on April 23, 1996. (A.R. at 173.) According to Dr. Oliveras, Smith's reported substance abuse consisted of a pack of cigarettes each day and alcohol on a daily basis since the age of seventeen. (A.R. at 174.) Dr. Oliveras concluded that the extent of Smith's physical disabilities included uncomplicated diabetes, a left calf peroneal fracture, numbness of the left foot as a result of this fracture, and alcoholism. (A.R. at 175.)

Smith also underwent a comprehensive psychological examination on April 23, 1996. (A.R. at 178–180.) During his examination, Smith told Dr. John Peggau that he "drinks five bottles of wine per day ... and smokes crack cocaine on a daily basis." (A.R. at 178.) Smith also reiterated that to support these habits he steals, robs and burglarizes. *Id.* The psychologist noted at several junctures of the examination that Smith was not putting forth a reasonable effort to respond to questions posed to him, and in fact was "attempting to mimic a mental health condition." (A.R. at 178, 179.) Smith scored within the mentally deficient range on the Wechsler Adult Intelligence Scale—Revised (I.Q.test), demonstrating an impaired response on every question administered. (A.R. at 179.) The medical expert felt that Smith's lack of effort might have completely invalidated the test results. (A.R. at 50.)

Dr. Mary Lee, a consultant psychologist for the Social Security Administration reviewed Smith's medical records on June 3, 1996, and concluded that despite his complaints, Smith would be capable of performing unskilled tasks. (A.R. at 105.) Dr. Lee's notes reiterate that Smith had a drug and alcohol dependence. (A.R. at 108.) Furthermore, Dr. Lee felt that because Smith gave no effort in the psychological examination performed on April 23, 1996, the results of the test were invalid. *Id.*

### 2. Independent Medical Evaluations

On June 24, 1996, Smith visited the University of Illinois at Chicago Hospital for emergency treatment because he was hearing voices. (A.R. at 159.) The hospital report indicates that Smith tested positive for alcohol, tobacco, and crack. *Id.* He was diagnosed with substance abuse, diabetes, and hallucinosis. *Id.* Furthermore, a physician's comments accompanying this report relates that Smith is a chronic and daily alcohol user drinking 40

oz. of beer each day, uses cocaine daily, and also uses PCP and marijuana. (A.R. at 161.)

A report of August 8, 1996, by Wayne Hendrick ("Hendrick"), a therapist at the Ecker Center for Mental Health, notes that Smith was complaining of voices bothering him and paranoia, and indicates that his drug and alcohol addictions seemed to be in remission. (A.R. at 189.) In fact, Smith reported to Hendrick that he had not used drugs for three months prior to the examination. (A.R. at 190.) Hendrick's diagnosis was poly-substance dependence in remission, a psychotic disorder, a developmental disorder, diabetes, an infection, and a severe "psychological stressor." (A.R. at 191.)

On October 1, 1996, Smith received an additional psychiatric evaluation from Dr. T. Arcinas, a second staff member of the Ecker Center for Medical Health. (A.R. at 192.) Dr. Arcinas reported that Smith was of below average intelligence and possessed a limited fund of knowledge to such an extent that he had difficulty communicating or understanding some words during the interview. *Id.* The doctor felt that Smith had good insight and fair judgment, and that his memory was intact. *Id.* Smith admitted to drinking about three times a month. (A.R. at 193.) Dr. Arcinas saw Smith again on November 11, 1996. (A.R. at 195.) During this visit, Dr. Arcinas made some minor adjustments in Smith's medications and briefly questioned him regarding his daily activities. *Id.* Smith told Dr. Arcinas that he stays home, watches TV, and goes out biking with friends. *Id.* Smith also reported a fall from his bike that left him with a sprained shoulder. *Id.*

Finally, the Inner Arts Counseling Service examined Smith on February 11, 1997. Smith scored significantly higher on the Wechsler Adult Intelligence Scale–Revised (I.Q.test). (A.R. at 196–202.) The report indicates that Smith "appeared cooperative and took a conscientious approach to the testing." (A.R. at 198.) Smith fell within the Intellectually Deficient classification, yet he exhibited an almost twenty point improvement as compared to his previous examination. *Id.* The physician found Smith to be alert and cooperative, apparently free from drugs or alcohol, yet severely depressed. (A.R. at 196–202.) In fact, the examiner stated that "present findings from the Michigan Alcoholism Screening Test indicated no problematic use of drugs or alcohol at this time." (A.R. at 198.) With respect to Smith's claims of hearing voices, the doctor stated that it was "uncertain whether [Smith's] hallucinations are continuing." (A.R. at 201.) The doctor's concluding remarks were that "Smith cannot successfully perform any type of competitive employment at this time." (A.R. at 202.)

## C. Questionnaires

In his application, Smith completed two drug and alcohol use questionnaires, (A.R. at 181, 183), and two activities of daily living questionnaires, (A.R. at 134, 139). In the activities of daily living questionnaires, Smith wrote that his problems started at age fourteen when he began to drink. (A.R. at 140.) These problems were exacerbated by his experiences in prison. *Id.* Smith also indicated that he has difficulties remembering almost anything. *Id.* In addition, he hears voices and feels that people are watching and trying to kill him. *Id.*

In the drug and alcohol use questionnaire of March 30, 1996, Smith wrote that he drinks as much wine or whiskey as he can get on a daily basis. (A.R. at 181.) In addition, Smith admitted to using both marijuana and cocaine. *Id.* Smith reported that he spent ten to twenty dollars each day on alcohol and drugs and that he supported these habits by begging, stealing, and thieving. *Id.* In the drug and alcohol questionnaire of July 5, 1996, Smith stated that he began using drugs at approximately the age of fourteen or fifteen. (A.R. at 183.) He indicated that he was drinking every day at this point, consuming as much as three gallons of beer,

wine or corn whiskey daily, and up to twenty gallons per week. *Id.* Smith wrote that he drinks every day, all day, and never gives himself a chance to recover. *Id.* Smith also reported that he was currently using cocaine and PCP in addition to drinking alcohol. *Id.*

## II. THE DECISION OF THE ALJ

■ The ALJ applied the Commissioner's sequential evaluation of "disability" under 20 C.F.R. § 416.920(b)-(f) to determine that Smith was not disabled. (A.R. at 12.) In making this determination, the ALJ found that Smith did not satisfy the first step of the five-part test because he had engaged in substantial gainful activity to support his drug and alcohol habits. (A.R. at 12.) The ALJ stated that the Seventh Circuit has held that illegal activity can be considered substantial gainful activity, *Dotson v. Shalala*, 1 F.3d 571 (7th Cir.1993), and has reaffirmed this principle in *Jones v. Shalala*, 21 F.3d 191 (7th Cir. 1994), where the Court also approved the presumption of substantial gainful activity set forth in 20 C.F.R. § 416.974(b) based on earnings exceeding $500 per month. (A.R. at 11.)

The ALJ found the evidence available to him was insufficient to rebut the presumption that Smith had been engaging in substantial gainful activity for the following reasons. First, there is substantial evidence that Smith has been performing illegal substantial gainful activity and has been earning approximately $2000 per month. (A.R. at 12.) Second, the illegal work Smith has been performing involves significant physical or mental activities done for pay or profit. *Id.* Third, Smith has not been unable to engage in substantial gainful activity for any continuous period of at least twelve months. *Id.*

## III. THE DECISION OF THE APPEALS COUNCIL

The Appeals Council denied Smith's request for review on January 8, 1998, after reviewing Smith's request, applicable statutes, regulations, and contentions raised. (A.R. at 3.) Thus, the ALJ's decision stands as the Commissioner's final decision because the Appeals Council denied Smith's request for review. 20 C.F.R. § 404.981; *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir.1994).

## IV. THE STANDARD OF REVIEW

■ Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..." When the Appeals Council denies a request for review, an ALJ's decision becomes the Commissioner's final decision, and the decision reviewed by the district court. *Herron*, 19 F.3d 329, 332 (7th Cir. 1994). The district court may not consider evidence not submitted to the ALJ. *Eads v. Secretary of the Dept. of Health and Human Services*, 983 F.2d 815, 817 (7th Cir.1993). The correctness of the ALJ's decision rests on the evidence that was part of the record as it existed when the ALJ's decision was made. *Id.*

■ A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *see also Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The ALJ's decision must be affirmed if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's argument. 42 U.S.C. § 405(g); *see also Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir.1993). The court

may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992). A credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *Brewer v. Chater,* 103 F.3d 1384, 1392 (7th Cir.1997). Finally, the court must determine whether the ALJ fulfilled his duty "to develop the record fully and fairly." *Dugan v. Sullivan,* 957 F.2d 1384, 1390 (7th Cir.1992).

## V. ESTABLISHING A DISABILITY

Under the Social Security Act, an individual will be considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work ..." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a sequential five-step process to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(b)-(f). The five-step process is as follows: (1) is the claimant presently working and is that work substantial gainful activity?; (2) is the claimant's impairment "severe"?; (3) does the impairment meet or equal one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1)?; (4) is the claimant unable to perform his past relevant work?; and (5) does the claimant's age, education, and past work experience, in reference to the residual functional capacity, enable him to do other work? 20 C.F.R. § 416.920(b)-(f).

Under step one, if the Commissioner determines that an individual is engaging in substantial gainful activity, then that individual's claim is rejected without consideration of his mental or physical impairments. 20 C.F.R. § 416.920(b); *see Jones,* 21 F.3d at 192. Substantial gainful activity is defined as work activity "that involves doing significant physical or mental activities ... for pay or profit." 20 C.F.R. §§ 416.972(a), (b); *see Jones,* 21 F.3d at 192. "The Commissioner of Social Security shall make determinations under this subchapter with respect to substantial gainful activity without regard to the legality of the activity." 42 U.S.C. § 1382c(a)(3)(E). Earnings, whether legal or illegal, in excess of $500 per month between 1989 and July of 1999 will create a rebuttable presumption of substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(vii). However, these earnings guidelines only create a presumption, and the "claimant may ... rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time." *Jones,* 21 F.3d at 193 (quoting *Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir. 1990)). The ALJ must decide each case on its own particular facts to determine whether a claimant has been engaged in substantial gainful activity. *See Stark v. Weinberger,* 497 F.2d 1092, 1100 (7th Cir. 1974).

## VI. THERE WAS SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT THE ALJ'S FINDING THAT THE CLAIMANT WAS NOT "DISABLED" BECAUSE THE CLAIMANT WAS ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY.

This Court finds that there is substantial evidence in the record to support the ALJ's factual determination of Smith's claim through the five-step process under 20 C.F.R. § 416.920(b)-(f). Under step one of the evaluation, the ALJ properly concluded that Smith was engaged in sub-

stantial gainful activity, and therefore was not disabled.

The record provides substantial evidence that a "reasonable mind might accept as adequate to support the conclusion" that Smith was engaged in substantial gainful activity. *See Richardson,* 402 U.S. at 401, 91 S.Ct. 1420. In addition, this Court may reverse the Commissioner's decision only if the evidence "compels" reversal. *Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. 812. In the instant case, the Commissioner's decision neither "compels" nor warrants reversal.

### A. The ALJ Properly Proceeded in Smith's Absence.

Smith first contends that the ALJ was required to make a finding of "good cause" before deciding the merits without Smith's testimony. Smith's argument is unsupported by the regulations. 20 C.F.R. § 416.1436(c) and (d) state:

(c) The administrative law judge will find good cause for changing the time or place of your scheduled hearing and will reschedule your hearing if your reason is one of the following circumstances and is supported by the evidence:

(1) You or your representative are unable to attend or to travel to the scheduled hearing because of a serious physical or mental condition, incapacitating injury, or death in the family; or

(2) Severe weather conditions make it impossible to travel to the hearing.

(d) In determining whether good cause exists in circumstances other than those set out in paragraph (c) of this section, the administrative law judge will *consider* a request for a change in hearing time or date, the facts supporting it, and the impact of the proposed change on the efficient administration of the hearing process. Factors affecting the impact of the change include, but are not limited to, the effect on the processing of other scheduled hearings, delays which might occur in rescheduling your hearing, and whether any prior changes were granted to you.

20 C.F.R. § 416.1436(c)-(d) (emphasis added).

■ In this case, the ALJ went out of his way to accommodate Smith's failure to appear. At Smith's original hearing date of November 14, 1996, the ALJ spoke with Smith and rescheduled the hearing after advising him to obtain representation. (A.R. at 26–29.) On the day of the first rescheduled meeting, Smith telephoned the Office of Hearings and Appeals indicating he would be unable to attend due to illness. (A.R. at 94.) The ALJ postponed the hearing to March 5, 1997. *Id.* Smith was absent without explanation at the March 5, 1997 hearing although a representative, Harold Dade, was present to reschedule the hearing for a third time. (A.R. at 39.) On June 4, 1997, Smith again failed to appear at a hearing attended by a medical expert. (A.R. at 45.) The ALJ and Smith's representative agreed to proceed with the examination of the medical expert. (A.R. at 46.) The ALJ left Smith's representative the option to pursue an additional hearing, stating, "you can decide later if you want to—if you think it would be helpful to have testimony." (A.R. at 66.) Smith's representative responded, "[I] feel comfortable without having to have my client testify." *Id.* In addition, the ALJ extended an invitation to Smith's representative to submit additional evidence or testimony for a 30–day period following the hearing. *Id.* No additional testimony was submitted, and no additional hearings were requested during this period.

Smith claims that even though the ALJ conferred with his representative and provided an additional thirty days after the third-rescheduled hearing for additional evidence, the ALJ's decision without an additional continuance violated Smith's right to due process. Smith claims that he has been "sandbagged" because the ALJ formulated his decision on Smith's substantial gainful activity despite questions to the Medical Expert suggesting that the issue of whether drugs or alcohol was a

material contributing factor to Smith's disability was his primary consideration. The ALJ has a duty to develop the record fully and fairly. *Dugan*, 957 F.2d at 1390. Under the circumstances in this case, the ALJ fulfilled this duty. Both Smith and his representative were provided notice of the procedure the ALJ would follow in deciding his claim. (A.R. at 14, 17, 21.) The ALJ followed the five-step sequential analysis under 20 C.F.R. § 416.920(b) and determined under step one that Smith had been engaging in substantial gainful activity. Furthermore, the ALJ made several efforts to accommodate Smith's consistent absence from his hearings. Thus, because the ALJ complied with the applicable regulations and made every effort to accommodate Smith's absence, the claim that his right to due process has been violated is without merit.

Smith's representative made the decision to proceed with the hearings without Smith's testimony and to rest upon the record. Therefore, because the ALJ rescheduled the hearings several times, obtained the permission of Smith's representative to proceed without Smith's testimony, maintained an invitation to submit additional evidence for thirty days following the final hearing, and made a thorough determination of the claim, the ALJ did not err or violate Smith's right to due process in reaching a decision without Smith's testimony.

## B. There is Substantial Evidence to Support the Presumption of Substantial Gainful Activity.

■■■ Smith's earnings from illegal activities, including stealing, create a rebuttable presumption of substantial gainful activity. The Seventh Circuit has established that evidence of earnings from illegal activities in excess of $500 between June of 1989 and July of 1999 used to support a drug or alcohol addiction will create a rebuttable presumption of substantial gainful activity. *See Jones v. Shalala*, 21 F.3d 191, 193 (7th Cir.1994).

In *Jones*, the Seventh Circuit addressed a situation materially similar to the instant case. The 42 year-old plaintiff claimed to be permanently disabled because of alcoholism, addiction to heroin and cocaine, high blood pressure, diabetes, and back pain. The court found that the plaintiff's statements that he spent about $60.00 per day ($1,800.00 per month) on illegal drugs obtained by stealing supported a presumption of substantial gainful activity. *Jones*, 21 F.3d at 193. The court acknowledged that the plaintiff's statements constituted the only evidence in the record of "gainful employment," but found that an inference could properly be made that he was a career thief based on his statement and a record of over 100 arrests. *Id.*

■■■ In this case, Smith states in several questionnaires that he spends a substantial amount of money each day on alcohol and illegal drugs. In the drug and alcohol use questionnaire of March 30, 1996, Smith wrote that he drinks as much wine or whiskey as he can get. (A.R. at 181.) In addition, Smith admitted to using both marijuana and cocaine. *Id.* Smith reported that he spent ten to twenty dollars each day on alcohol and drugs, or between $300 and $600 per month. *Id.* Smith wrote that he supported these habits by begging, stealing, and thieving. (A.R. at 182.) In the second drug and alcohol questionnaire of July 5, 1996, Smith indicated that he was drinking every day, consuming as much as three gallons of beer, wine or whiskey daily, and up to twenty gallons per week. (A.R. at 183.) Smith also wrote that he drinks every day, all day, and never gives himself a chance to recover. *Id.* He reported that he was using cocaine and PCP in addition to alcohol. (A.R. at 183.) Although Smith did not put a price tag on the alcohol and illicit drugs in the second questionnaire, it is clear that these significant addictions required a substantial amount of money.

Statements made to several examining physicians corroborate the questionnaires. On April 10, 1996, Dr. Mian examined Smith for the Department of Disability Services. (A.R. at 169). Smith advised

Dr. Mian that he spent $20.00 to $30.00 per day on alcohol and $50.00 per day on drugs, or between $2,100 and $2,400 per month for both drugs and alcohol, financing this habit through begging and stealing. *Id.* On April 23, 1996 Smith was examined by Dr. Peggau, a consulting psychologist for the DDS, where he informed the doctor that he "drinks five bottles of wine per day ... and smokes crack cocaine on a daily basis." (A.R. at 178.) Smith also reiterated that to support these habits he steals, robs and burglarizes. *Id.*

The record contains written statements from Smith himself, as well as reports from several doctors, that he supported his drug and alcohol addictions by begging, stealing, thieving, and burglarizing. (A.R. at 169, 178, 181–183.) Smith's statements along with physician reports that he supported his drug and alcohol habits through theft and burglary "filled the gap" between his expenditures on drugs and alcohol and the means employed to obtain them. *Dotson v. Shalala,* 1 F.3d 571, 578 (7th Cir.

1993). In *Jones,* a single statement by the claimant that he stole money from cars or somebody at a bar to fund his $60 per day drug habit was sufficient to support presumption of SGA. *Jones,* 21 F.3d at 193. As in *Jones,* substantial evidence in the record supports the ALJ's determination.[1]

Smith also argues that because begging cannot be considered a substantial gainful activity, the ALJ erred by failing to determine the exact amount of begging in relation to the stealing Smith performed to earn money. Plaintiff's claim, however, holds no merit. The Seventh Circuit has stated that a detailed inquiry into the claimant's illegal activities may be unnecessary where the claimant is well above the minimum earnings according to 20 C.F.R. § 416.974(b)(2). *See Jones,* 21 F.3d at 194. In the instant case, Smith's responses to questions posed on the most recent questionnaire, corroborated by statements made to several physicians, indicate that he earned well above the required minimum $500 per month. (A.R. at 169, 178, 183.)

---

1. Several cases have involved determinations that substantial evidence supports a presumption of substantial gainful activity based on testimony from the applicant that they raised sufficient funds through illegal activities to support their habits. *See Jones,* 21 F.3d at 193 ("The administrative law judge asked Jones how much it cost him to 'do' heroin, cocaine, and alcohol. He answered, 'Right about $60.00 per day.' 'And where do you get $60.00 a day?' she asked. Jones answered, 'I steal it, cars, somebody at a bar.' "); "Sixty dollars a day every day equates to $21,900 a year, which is more than three times the income that triggers the presumption of gainful employment. Jones was explicit, if laconic, that he makes all this money by theft."); *Dotson,* 1 F.3d at 573–74 ("At the administrative hearing, Dotson testified that he uses $200 to $300 worth of heroin and cocaine each day. Additionally, he testified that he supports his drug habit by hustling.... Based on Dotson's testimony, the ALJ found that Dotson's stealing and panhandling constituted substantial gainful activity ('SGA') worth an average of approximately $5,600 per month and, accordingly, denied his claim for SSI benefits. Specifically, the ALJ found that, due to the poor area in which Dotson panhandles, the bulk of his income must come from illegal means."); *Ware v. Shalala,* 1994 WL 740897, *4 (C.D.Ill.1994) ("At the hearing, Ware again indicated that he 'hustles' to satisfy his $200 to $300 a day drug habit. When asked by the ALJ whether 'hustles' means stealing and running women, Ware answered under oath in the affirmative. The ALJ's finding that Ware earns an average of $6,450 a month equates to approximately $212.05 a day and $77,400 a year, which is almost thirteen times the income that triggers the presumption of gainful employment."); *Williams v. Shalala,* 1994 WL 121461, *5 ("This claimant testified that he supports his $30.00 to $50.00 per day drug habit by stealing, fencing, or other illegal activities. This would amount to a net income of $900.00 to $1500.00 per month, well in excess of the $500.00 needed to presume substantial gainful activity...."); *Nelson v. Shalala,* 1994 WL 461293, *3 ("Nelson testified to a $100 to $200 per day cocaine habit, three or four days per week. To support his habit, Nelson admitted to selling drugs, stealing, and panhandling.... The ALJ calculated Nelson's total consumption [of various drugs and alcohol] from between $1,755 to $3,330 per month, all admittedly from unreported earnings from selling drugs.")

### C. Smith Failed to Rebut the Presumption of Substantial Gainful Activity.

 The ALJ properly concluded that Smith did not present evidence sufficient to rebut the presumption of substantial gainful activity. The ALJ's decision must be affirmed if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's argument. 42 U.S.C. § 405(g); *see also Pope v. Shalala,* 998 F.2d 473, 480 (7th Cir.1993). In *Jones,* the court discussed circumstances that might rebut such a presumption of substantial gainful activity. *Jones,* 21 F.3d at 192. Examples of such circumstances might include: a permanently disabled claimant earning a decent wage purely through the charity of his boss; a seriously disabled worker able to perform only through extraordinary determination and the assistance of his fellow workers; or a disabled individual scraping together $500 through occasional work despite its great personal cost, clearly unable to continue such efforts. *Jones,* 21 F.3d at 192.

In this case, although there is some evidence in the record that Smith relies to a certain extent on his family for support, the record demonstrates that Smith has been supporting a severe drug and alcohol habit for nearly twenty continuous years, spending approximately $2100 per month to fund these addictions. (A.R. at 169.) There is no evidence that Smith's situation resembles any of the examples provided by the court in *Jones* to rebut the presumption. Furthermore, Smith has not explained what testimony he could have provided to rebut the presumption. The ALJ was presented with a compelling record that Smith supported his drug and alcohol abuse by stealing and begging.

### D. The ALJ Properly Terminated his Evaluation of Washington's Claim at Step One in the Evaluation of Disability under 20 C.F.R. § 416.920(b)-(f).

Finally, because the ALJ properly determined that Smith was engaged in substantial gainful activity, the ALJ rightfully terminated his evaluation of Smith's claim at step one in the five step evaluation of disability. "If you are substantially gainfully employed, that is the end of your claim, even if you have compelling medical evidence that you really are disabled." *Jones,* 21 F.3d at 193. Having determined that Smith was engaged in substantial gainful activity, the ALJ did not have a duty to consider Smith's mental or physical impairments.

## VII. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and the decision of the ALJ dated November 22, 1997, is affirmed.