Archie WASHINGTON, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security Defendant.

No. 98 C 6734.

United States District Court,
N.D. Illinois,
Eastern Division.

July 23, 1999.

Mary Elizabeth Kopko, Attorney at Law, Chicago, IL, for Archie Washington, plaintiff.

Carole Judith Ryczek, United States Attorney's Office, Chicago, for Kenneth Apfel, Commissioner Social Security, defendant.

## MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

Plaintiff Archie Washington ("Washington or Plaintiff") brings this action to review the final decision of the Commissioner of Social Security ("Commissioner") denying Washington's claim for Supplemental Security Income ("SSI") disability benefits under the Social Security Act, 42 U.S.C. § 1381 *et seq.* The Administrative Law Judge ("ALJ") found that based on Washington's engagement in substantial gainful illegal activity he was not disabled and thus not eligible for SSI. (R. at 15–16.)

This matter comes before the Court on cross motions for summary judgment to decide whether substantial evidence in the record supports the ALJ's finding that Washington was not disabled. (R. at 16.) For the reasons stated herein, the Court grants Defendant's motion for summary judgment, denies Washington's motion for summary judgment, and affirms the ALJ's decision.

## I. FACTUAL BACKGROUND

Archie Washington, a 61 year-old with a ninth grade education and no past relevant work experience, first applied for SSI disability benefits on July 6, 1994. (R. at 22, 23, 25, 32.) Washington's application was denied initially, on request for reconsideration, at the hearing, and by the Appeals Council. (R. at 3, 16, 35, 42.)

### A. Washington's Testimony

Washington testified at a hearing before ALJ Larry Miller on February 14, 1997, that he had not been able to work from approximately 1970 until October 1996 due to a thirty-year drug addiction. (R. at 23–

26.) Washington had been working part-time as a janitor for approximately four and a half months immediately prior to the hearing, for three to four hours per day, at a wage of $ 6.50 per hour. (R. at 24–25.)

Under questioning by the ALJ, Washington gave inconsistent testimony regarding his drug usage. Washington first stated that he stopped using drugs in 1985. (R. at 26.) Then, after the ALJ asked Washington about a July 1994 drug and alcohol questionnaire on which Washington indicated that he last used drugs during his incarceration in 1994, Washington altered his testimony, stating that he stopped using drugs in July 1994. (R. at 26, 56.) After the ALJ told Washington that according to a 1995 medical examination Washington was still using drugs, Washington again altered his testimony, claiming that he stopped using drugs in 1995. (R. at 27.) Finally, Washington testified that he had not used drugs since his release from the penitentiary in June 1994. *Id.* Washington stated that the discrepancy in his testimony was due to his inability to remember dates. (R. at 29.)

Washington testified that during his addiction, he used heroin, cocaine, and morphine on a daily basis. (R. at 28.) As to the amount used, Washington testified that he used approximately $25 to $200 worth of drugs per day. *Id.* In response to the ALJ's question of how Washington obtained those drugs, Washington testified that he supported his drug habit by stealing. *Id.*

In response to questioning by his attorney, Washington testified that since his release from jail in 1994 he had smoked reefers. (R. at 29–30.) He also testified that since his release from jail he had ceased stealing and had not been arrested. (R. at 30–31.) The ALJ denied Washington's attorney the opportunity to question Washington regarding his physical impairments. (R. at 31.)

## B. Medical Evidence

In his application, Washington alleged that he suffered from arthritis and hypertension. (R. at 63.) He also stated that he had a history of kidney problems and substance abuse. (R. at 47.) Washington underwent a consultative physical examination by Dr. Diane Collins on July 23, 1994. (R. at 70–74.) During the examination, Washington stated that he "did the last IV shot [of narcotics] about seven and a half years ago." (R. at 70.) In addition, Washington stated that he had used alcohol every day. (R. at 71.) However, Washington explained that he had been "clean" since June 9, 1994, and was participating in a drug treatment program at the time of the examination. *Id.*

On November 28, 1994, Washington underwent a consultative psychological examination by Dr. Alan J. Ward, Ph.D. (R. at 93–108.) Washington stated that his primary medical problems were drug abuse, arthritis, alcohol abuse, and flashbacks. (R. at 93.) Washington stated that he experienced hallucinations while abusing drugs. (R. at 94.) In addition, Washington told Dr. Ward that he had repetitive dreams of dying of a drug overdose, but still insisted on using drugs. *Id.* Washington also said that he "preferred drugs to alcohol." *Id.* In his report, Dr. Ward wrote that an analysis of a psychological test given to Washington, revealed a high level of deviant responses to questions. *Id.* Dr. Ward concluded that Washington suffered from an anxiety-related disorder, a personality disorder, and a substance addiction disorder.[1] (R. at 96.)

## C. Questionnaires

In his benefit application, Washington completed both a drug and alcohol use questionnaire and an activities of daily living questionnaire. (R. at 55–61.) In the drug and alcohol questionnaire, Washington stated that he had started using drugs

---

1. While Dr. Ward's report indicates that he examined Washington on November 28, 1994, he stated his diagnosis in a report dated October 26, 1995. (R. at 93, 108.)

in approximately 1955 and had last used drugs and alcohol while incarcerated. (R. at 55–56.) Washington wrote that his alcohol and drug use affected his daily activities because of withdrawals or abuse. (R. at 55.) Washington stated that he was not able to obtain work because of his drug and alcohol use. *Id.* He indicated that he supported his drug habit with money from his wife, girlfriend, and general assistance benefits. (R. at 56.)

In the activities of daily living questionnaire, Washington wrote that his drug abuse made his memory "bad," and that his drug use caused him problems in finishing tasks. (R. at 58.) He also indicated that he had heard voices that interrupted his daily activities because of "bad" drugs that he received. *Id.*

## II. THE DECISION OF THE ALJ AND APPEALS COUNCIL

The ALJ applied the Commissioner's sequential evaluation of disability to determine that Washington was not disabled. (R. at 13.) In making this determination, the ALJ found that Washington did not satisfy the first step of the five-part test because he was engaged in substantial gainful activity to support his drug and alcohol habits. (R. at 14.) The ALJ stated that "Seventh Circuit case law has established that both legal and illegal earnings in excess of $500 per month for [the] years after 1989 will create a rebuttable presumption of substantial gainful activity which will prevent an individual from receiving disability benefits, regardless of their medical problems. (*Jimmie L. Jones v. Shalala*, 21 F.3d 191 (7th Cir.1994))." *Id.*

The ALJ found that Washington's testimony and other statements did not rebut the presumption that he had been engaging in substantial gainful activity. (R. at 15.) The ALJ gave five reasons for his conclusion that Washington was still using drugs and employed in gainful activity. First, the ALJ found Washington's testimony inconsistent as to when he stopped using drugs. *Id.* Second, in his drug and alcohol questionnaire, Washington answered many of the questions regarding his drug use in the present tense. (R. at 14.) Third, after a psychological examination of the plaintiff, Dr. Ward wrote in his October 26, 1995 report that Washington still continued to abuse drugs and alcohol. *Id.* Fourth, the ALJ found it unlikely that a person with a thirty-year drug and alcohol addiction could cure his drug habit on his own. (R. at 15.) Finally, because Washington testified that he typically used $25 to $200 worth of heroin, cocaine and marijuana daily and paid for those drugs by stealing, he could not rebut the presumption of substantial gainful activity. *Id.* Therefore, the ALJ decided that Washington was not eligible for SSI. (R. at 16.)

The Appeals Council denied Washington's request for review on September 25, 1998. (R. at 3.) Washington then filed suit in this court.

## III. THE STANDARD OF REVIEW

 Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that "the findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ..." When the Appeals Council denies a request for review, an ALJ's decision becomes the Commissioner's final decision to be reviewed by the district court. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993). The district court may not consider evidence not submitted to the ALJ. *Eads v. Secretary of the Depart. of Health and Human Serv.,* 983 F.2d 815, 817 (7th Cir. 1993). The correctness of the ALJ's decision rests on the evidence that was part of the record before the ALJ. *Id.*

 A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). Judicial review is limited to determining whether the ALJ

applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *see also Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The ALJ's decision must be affirmed if the findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support the claimant's argument. 42 U.S.C. § 405(g); *see also Pope v. Shalala,* 998 F.2d 473, 480 (7th Cir.1993). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992). A credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *Brewer v. Chater,* 103 F.3d 1384, 1392 (7th Cir.1997). Finally, the court must determine whether the ALJ fulfilled his duty "to develop the record fully and fairly." *Dugan v. Sullivan,* 957 F.2d 1384, 1390 (7th Cir.1992).

## IV. ESTABLISHING A DISABILITY

Under the Social Security Act, an individual will be considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work ..." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a sequential five-step process to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920(b)-(f). The five-step process is as follows: (1) is the claimant presently working and is that work substantial gainful activity?; (2) is the claimant's impairment severe?; (3) does the impairment meet or equal one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1)?; (4) is the claimant unable to perform his past relevant work?; and (5) does the claimant's age, education, and past work experience, in reference to the residual functional capacity, enable him to do other work? 20 C.F.R. § 416.920(b)-(f).

Under step one, if the Commissioner determines that an individual is engaging in substantial work activity, then that individual's claim is rejected without consideration of his mental or physical impairments. 20 C.F.R. § 416.920(b); *see Jones v. Shalala,* 21 F.3d 191, 192 (7th Cir.1994). Substantial gainful activity is defined as work activity "that involves doing significant physical or mental activities ... for pay or profit." 20 C.F.R. §§ 416.972(a), (b); *see Jones,* 21 F.3d at 192. "The Commissioner of Social Security shall make determinations under this subchapter with respect to substantial gainful activity without regard to the legality of the activity." 42 U.S.C. 1382c(a)(3)(E). Earnings, whether legal or illegal, in excess of $200 per month before the calendar year 1976 will create a rebuttal presumption of substantial gainful activity. 20 C.F.R. § 416.974(b)(2)(i); *see also Jones,* 21 F.3d at 192. The minimum earnings amount has increased incrementally to an amount of $500 per month in calendar years after 1989. 20 C.F.R. § 416.974(b)(2)(vii). However, these earnings guidelines only create a presumption, and the claimant may rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform a job well,

without special assistance, or for only brief periods of time. *Jones,* 21 F.3d at 193.

## V. THERE WAS SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT THE ALJ'S FINDING THAT THE CLAIMANT WAS NOT "DISABLED" BECAUSE THE CLAIMANT WAS ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY.

This Court finds that there is substantial evidence in the record to support the ALJ's factual determination that Washington was engaged in substantial gainful activity, and therefore was not disabled. Washington argues that the ALJ failed to develop the record fully and fairly in deciding that Washington was engaged in substantial gainful activity. Washington claims the ALJ made no findings as to the severity of the Plaintiff's physical and mental impairments nor as to the resulting functional limitations. Washington also claims that the ALJ relied upon unsubstantiated opinions and baseless assumptions to find that Washington was engaged in substantial gainful activity. The Court disagrees.

### A. Washington's Earnings Create a Rebuttable Presumption of Substantial Gainful Activity.

█ Washington's earnings from stealing to support a drug habit create a rebuttable presumption of substantial gainful activity. The Seventh Circuit has established that earnings gained by stealing in order to support a drug habit will create a rebuttable presumption of substantial gainful activity. *See Jones v. Shalala,* 21 F.3d 191, 193 (7th Cir.1994). In *Jones,* the ALJ asked the plaintiff how much it cost him to "do" drugs. *Id.* The plaintiff answered that it cost him $60 per day, equating to $21,900 per year, well above the income that triggers the presumption of substantial gainful activity. *Id.* The plaintiff testified that he raised the money by stealing. *Id.* The Seventh Circuit found

that this inquiry was sufficient to end plaintiff's claim, even if he had compelling medical evidence that he was disabled. *See Jones,* 21 F.3d at 193.

Similarly, in the instant case, Washington testified that he used between $25 to $200 worth of drugs per day, which equates to between $8725 and $73,000 per year. (R. at 28.) The ALJ asked "so how did you [Washington] get your hands on these drugs?" (R. at 28.) Washington answered, "Stealing." *Id.* These illegal earnings meet the minimum amount to trigger a rebuttable presumption of substantial gainful activity. *See* 20 C.F.R. § 416.974(b)(2) (earnings chart indicates a minimum of $200 per month for the period before 1976, increasing incrementally to a minimum of $500 per month after 1989).

Plaintiff argues that the ALJ failed to inquire into the details of Washington's illegal activity. Specifically, plaintiff contends that the ALJ failed to ask about the methods of his gainful activity, the length of time spent in the activity, and the mental and physical demands of the presumed work. However, the Seventh Circuit has stated that inquiring into the details of the claimant's illegal activities may be unnecessary where the claimant is well above the minimum earnings. *See Jones,* 21 F.3d at 194. Thus, the ALJ's inquiry was sufficient to create a rebuttable presumption of substantial gainful activity.

### B. Washington Failed to Rebut the Presumption of Substantial Gainful Activity.

█ Washington failed to rebut the presumption that he was engaged in substantial gainful activity. Plaintiff argues that the record is clear that he had not been stealing to support a drug habit and had not used drugs since 1994. The ALJ disagreed and found plaintiff's testimony to be "incredible." (R. at 15.) The Court finds substantial evidence to support the ALJ's conclusion that Washington was still engaged in illegal activities to support his drug habit. Washington's inconsistent tes-

timony regarding when he stopped using drugs supports the ALJ's conclusion that Plaintiff is still using drugs. (R. at 26, 27, 29, 56.) Dr. Ward, the psychologist who examined Washington on November 28, 1994, found that Washington was abusing drugs and alcohol and was being deviant in his answers. (R. at 94.) Washington answered many questions on his drug and alcohol use questionnaire in the present tense, also indicating his continuing use. (R. at 55–56.) Courts will defer to determinations of credibility made by triers of fact when they articulate their reasoning, as they are in the best position to observe the witness. *See Zalewski v. Heckler,* 760 F.2d 160, 166–67 (7th Cir.1985). Because Washington's earnings created a rebuttable presumption of substantial gainful activity, and Washington's statements in rebuttal were not credible, Washington was not entitled to SSI disability benefits.

### C. The ALJ Properly Terminated his Evaluation of Washington's Claim at Step One in the Evaluation of Disability.

Because the ALJ correctly determined that Washington was engaged in substantial gainful activity, the ALJ properly terminated his evaluation of Washington's claim at step one in the evaluation of disability under 20 C.F.R. § 416.920(b)-(f). Plaintiff claims that the ALJ failed to consider the severity of Plaintiff's physical and mental impairments. However, the Commissioner follows a set order in his evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a). Under step one, if the Commissioner determines that an individual is engaging in substantial work activity, then that individual's claim is rejected without consideration of his mental or physical impairments. 20 C.F.R. § 416.920(b); *see Jones,* 21 F.3d at 192. Thus, in the instant case, once the ALJ determined that Washington was engaging in substantial gainful activity, he did not have the duty to consider Washington's mental or physical impairments.[2]

## VI. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED,** Plaintiff's motion for summary judgment is **DENIED,** and the decision of the ALJ dated March 24, 1997, is **AFFIRMED.**

---

2. Although the ALJ did not have a duty to consider the other four steps of the five-part test, there may be a benefit to permitting a claimant to make a complete record as a matter of judicial economy.