**Clide R. CROSBY, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 97 C 8459.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 9, 1999.

Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, IL, for Plaintiff.

Carole J. Ryczek, Asst. U.S. Attorney, Catherine A. Seagle, Asst. Regional Counsel, Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Plaintiff Clide R. Crosby ("Crosby") brings this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner") denying Crosby's claim for Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a. The Administrative Law Judge ("ALJ") found that Crosby was not disabled. (A.R. at 10–17.) The Appeals Council denied Crosby's request for review. (A.R. at 3–4.)

This matter comes before the Court on cross motions for summary judgment. The Court held oral argument on November 29, 1999. The issues to be decided are whether substantial evidence in the record supports the ALJ's finding that Crosby was not disabled and that there were a significant number of jobs in the national economy that Crosby could perform. For the reasons set forth below, the Court grants Defendant's motion for summary judgment, denies Crosby's motion for summary judgment and affirms the ALJ's decision.

## I. FACTUAL BACKGROUND

### A. Testimony

#### 1. Crosby's Testimony

Crosby appeared with counsel and testified at a hearing before the ALJ on June 20, 1996. (A.R. at 25–60.) Crosby was 37 years old at the time of the hearing. (A.R. at 30.) Crosby received a high school diploma and had carpentry training. (A.R. at 30–31.) Crosby served in the United States Army from 1982 to 1990. (A.R. at 31). After leaving the Army, Crosby worked for one year with Nina Enterprises (A.R. at 31–32), and for approximately three years with R.I. Bussey Company. (A.R. at 32–33.) Crosby's position at R.I. Bussey required him to be on his feet for approximately eight hours at a time lifting debris off a conveyer belt. (A.R. at 50–51.) This required lifting weights as much as 25 pounds, occasionally more, and constant bending and reaching. (A.R. at 32–33, 35). The position is classified as semi-skilled, medium exertional work. (A.R. at 35.) Crosby stopped working at R.I. Bussey in 1994. He now supports himself with public aid. (A.R. at 51.)

Crosby claims he is disabled because he has back and shoulder pain that prevents him from working. (A.R. at 37.) Crosby claims he has pain in his lower back and shoulders that comes and goes. (A.R. at 37, 39.) He has problems sitting and his pain requires him to sit on an angle with his left leg extended. (A.R. at 44, 46). When in this position he is able to sit for a period of time but must stand to relieve his pain. (A.R. at 44.) He could probably stand for a couple of hours at a time, but would still experience pain. (A.R. at 47.) He could not stand for eight hours a day. (A.R. at 47.) He walks with a limp. (A.R. at 44–46.) He can walk several blocks and may even be able to walk a mile if permitted to stop for breaks. (A.R. at 46.) He can reach and lift with his hands and arms, although heavy lifting causes pain. (A.R. at 37–38.) He does not bend because he is scared that he might further injure himself. (A.R. at 39.) He suffers from asthma which he treats with an inhaler. (A.R. at 55.)

Crosby takes 600 milligrams of Ibuprofen as needed, up to four times a day, to relieve his pain. (A.R. at 35.) The Ibuprofen works and lessens the pain. (A.R. at 36, 52.) He also uses a TNS unit which provides electrical stimulation and heat to his back. (A.R. at 36, 52.) He took part in limited physical therapy. (A.R. at 52.) He has not been prescribed any other medicines for his injury and does not use any other assistive devices. (A.R. at 36.)

Crosby lives with his wife and five children. (A.R. at 51.) He occasionally helps with preparing meals (A.R. at 41), but is unable to help with the housework or grocery shopping. (A.R. at 42). He enjoys

reading and watching television. (A.R. at 43–44). He attends church every other Sunday. (A.R. at 44). Although Crosby does not follow a set exercise regimen, he swims and attempts to follow prescribed exercises. (A.R. at 43.)

### 2. Vocational Expert's Testimony

Dr. William G. Fisher, the Vocational Expert ("VE"), testified at the hearing. (A.R. at 53–59.) The VE stated that Crosby's past work was classified as semiskilled and the exertional level was medium in physical demand. (A.R. at 35.)

The ALJ asked the VE to give his opinion under a hypothetical situation. (A.R. at 54–56.) The VE opined that Crosby could perform sedentary level work. (A.R. at 57.) The VE described the job of cashier as sedentary, with approximately 7,000 positions in the region. (A.R. at 57.) The VE also described the job of surveillance system monitor as sedentary, with approximately 5,000 positions in the region. (A.R. at 57.) According to the VE both positions allow the employee the freedom to sit or stand at will. (A.R. at 57.) In addition, the VE described the positions of machine operator as light and entrance attendant as sedentary, both allowing the employee to sit or stand at will. (A.R. at 57.) The VE stated that there were approximately 7,000 machine operator positions and 6,000 gate attendant positions in the region. (A.R. at 57.)

The VE was also asked to consider a hypothetical Claimant who could not lift any weight regularly, unable to either sit or stand for a full eight hours. (A.R. at 58.) The VE stated that there was no substantial gainful activity that such a Claimant could do. (A.R. at 58.)

### B. Medical Evidence

### 1. Dr. C. Orfei, Treating Physician

Dr. C. Orfei first saw Crosby upon his admission to Westside VA Hospital on January 27, 1995. Crosby was admitted to the Emergency Room with a complaint of low back pain. (A.R. at 116.) Dr. Orfei's medical report indicates that a lumbosacral spine x-ray documented a degenerative disk at L3–4 without destructive lesions. (A.R. at 117.) During his five days of in-patient treatment, Crosby was treated for his pain with Demerol and Vistaril. (A.R. at 117.) Crosby was discharged on February 1, 1995 after his pain subsided. (A.R. at 117.) At the time of discharge Crosby was not prescribed any additional Demerol, but was given a prescription for Robaxin and placed on Motrin for pain. (A.R. at 118.) Upon Crosby's discharge, Dr. Orfei scheduled an out-patient MRI. (A.R. at 118.) Dr. Orfei noted that Crosby was not able to return to full employment immediately and that convalescence was required. (A.R. at 118) Dr. Orfei further noted that Crosby was limited to lifting no more than ten pounds until the MRI was completed. (A.R. at 118.)

Three weeks later, Dr. Orfei saw Crosby on February 22, 1995 for a Social Security disability determination. (A.R. at 124.) In his Respiratory Report, Dr. Orfei described Crosby's breath sounds as normal and did not note any attacks of asthma. (A.R. at 124.) In the Spinal Disorders Report, Dr. Orfei noted that Crosby suffered from low back strain, pain in the lower thoracic region, no sensory loss, symmetrical reflexes, no atrophy, and that Crosby was able to ambulate unassisted. (A.R. at 126.) Dr. Orfei noted that the radiologic findings indicated degenerative L3–4 changes. (A.R. at 126.) Dr. Orfei further noted negative straight leg raising at 90 degrees and limited flexion and extension of lumbosacral spine. (A.R. at 127.)

Concerning Crosby's ability to return to full weight bearing and lifting, Dr. Orfei noted that Crosby's expected return depended on the results of an MRI of Crosby's spine. (A.R. at 127.) When prompted to describe Crosby's ability to do work-related activities, Dr. Orfei commented that Crosby was temporarily restricted from lifting more than 50 pounds. (A.R. at 127.)

On March 15, 1995 Crosby underwent an MRI of his lumbar spine. The MRI showed disc degeneration, narrowing, an anterior disc bulge, and disc herniation at L3–4. Crosby had no signs of spinal stenosis. (A.R. at 150.)

In May 1995, Dr. Orfei reported that Plaintiff complained of back pain, which he treated with Motrin and a muscle relaxant. (A.R. at 151.) Dr. Orfei noted that surgery was not recommended for Plaintiff's back condition. (A.R.151.)

## 2. Residual Physical Functional Capacity Assessment, March 7, 1995.

A Residual Physical Functional Capacity Assessment was completed by a state medical agency consultant, Dr. Boyd McCracken, on March 7, 1995. Dr. McCracken reviewed Plaintiff's medical records and found that Plaintiff was able to perform medium exertion work. (A.R. at 128–135.)

## 3. Dr. Asim Cheema, Examining Physician, Report April 28, 1995.

Dr. Asim Cheema reviewed all information sent by the Bureau of Disability Services, including Dr. Orfei's Spinal Disorders and Respiratory Reports. (A.R. at 136–141.) Dr. Cheema evaluated the MRI of March 15, 1995 and found that Crosby had a herniated disc as well as nerve compression in his lower back. (A.R. at 136–139.) In his reply brief, Crosby contends that Dr. Cheema did not review the MRI which had been performed six weeks earlier. This is clearly not the case. Dr. Cheema states that Claimant "had an MRI in ⅗5 which showed that he had a herniated disc as well as nerve compression in his lower back." (A.R. at 136.) Dr. Cheema later states in his report that Claimant "has a significant history for low back trauma as well as a herniated disc shown on MRI in 3/95." (A.R. at 139.) Despite this, the neurological exam demonstrated "no evidence of cervical or lumbar nerve root compression or peripheral neuropathy." (A.R. at 139.) Dr. Cheema's history of Crosby's complaints discussed material previously discussed in Dr. Orfei's reports. (A.R. at 136.) Dr. Cheema noted a limita-

tion of range of motion in Crosby's spine. (A.R. at 139.) Dr. Cheema further noted that Crosby suffers from pain in both shoulders and that he was unable to elevate his arms above his shoulders. (A.R. at 140.) Finally, Dr. Cheema noted Crosby's complaint of asthma, but found his lung exam to be clear. (A.R. at 140.)

## 4. Residual Physical Functional Capacity Assessment, May 18, 1995

A Residual Physical Functional Capacity Assessment was completed by a state medical agency consultant, Dr. Ernst C. Bone, on May 18, 1995. (A.R. at 142–149.) Dr. Bone found that Crosby could occasionally lift up to 20 pounds and could frequently lift up to 10 pounds. (A.R. at 143.) He further found that Crosby could stand or walk for about six hours a day and could sit for about six hours a day. Dr. Bone noted that Crosby was limited in his posture to only occasional climbing, kneeling, stooping, crawling, and crouching. (A.R. at 144.) He noted that Claimant had a "herniated disc shown on MRI 3/95." (A.R. at 143.) Dr. Bone further found that Crosby was limited in his ability to reach in all directions. (A.R. at 145.) Crosby, however, was not limited in his visual acuity or communication skills. (A.R.146.) Finally, Dr. Bone noted that Crosby should avoid concentrated exposure to fumes, odors, and other elements effecting his asthma. (A.R.146.) Dr. Bone commented that his findings concerning Crosby's limitations and restrictions were not different from the findings of the Dr. Orfei and other examining sources. (A.R. at 148.) Claimant contends that the Court should substitute its medical judgment for that of the doctors arguing that the MRI report which indicates "extension into the right neural foramen" (A.R. at 150) means that claimant is disabled. The Court declines the invitation and instead relies upon the assessments of Dr. Cheema and Dr. Bone who were aware of the MRI results in making their findings and conclusions.

## II. DECISION OF THE ALJ

The ALJ determined that Crosby was capable of performing a limited range of sedentary and light work. (A.R. at 16.) The ALJ found that Crosby was not disabled. (A.R. at 10–17.) The ALJ discussed the testimony from the hearing, as well as the medical evidence. (A.R. at 11–15.) The ALJ found that Crosby has the residual functional capacity to perform a limited range of light and sedentary physical work, limited to lifting and carrying no more than twenty pounds, with no direct exposure to environmental irritants. (A.R. at 16.) The ALJ further found that although Crosby is unable to return to his former employment (A.R. at 10), he is capable of making an adjustment to work which exists in significant numbers in the economy. (A.R. at 10,16.)

## III. DECISION OF THE APPEALS COUNCIL

Crosby's request for review of the ALJ's decision was denied by the Appeal's Council (A.R. at 3.) The Appeals Council found no basis for changing the ALJ's decision. (A.R. at 3.)

## IV. STANDARD OF JUDICIAL REVIEW OF COMMISSIONER'S DECISION

Judicial review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g) which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala,* 997 F.2d 321, 322 (7th Cir.1993). When the Appeals Council denies a request to review a case, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. of Health and Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993). The correctness of the ALJ's decision rests on the evidence that was part of the record as existed when that decision was made. *Id.*

A reviewing court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986). The ALJ has the duty to resolve material conflicts and make independent findings of fact. *Richardson v. Perales,* 402 U.S. 389, 399–400, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *see also Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427. The ALJ's decision must be affirmed if his findings and inferences reasonably drawn from the evidence may also support the Claimant's argument. 42 U.S.C. § 405(g); *see also Pope v. Shalala,* 998 F.2d 473, 480 (7th Cir.1993). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815 n. 1, 117 L.Ed.2d 38 (1992). Finally, a credibility determination made by the ALJ will not be disturbed unless it is patently wrong. *Brewer v. Chater,* 103 F.3d 1384, 1392 (7th Cir.1997). Finally, the court must determine whether the ALJ fulfilled his duty "to develop the record fully and fairly." *Dugan v. Sullivan,* 957 F.2d 1384, 1390 (7th Cir.1992).

In the present case, the ALJ decision stands as the Commissioner's final decision because the Appeals Council denied Crosby's request for review. (R. at 3.) This Court reviews the ALJ's decision based on the evidence that was before the ALJ. *See Eads,* 983 F.2d at 817.

## V. ESTABLISHING A DISABILITY

Establishing a disability under the Social Security Act is a two-step process.

First, the plaintiff must suffer from a medically determinable physical or mental impairment, or a combination of impairments with can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir.1980). That factual determination is made by using a five-step process. *See* 20 C.F.R. § 416.920.

The five-step process asks the following questions: (1) is the Claimant presently unemployed; (2) is the Claimant's impairment "severe"; (3) does the impairment meet or equal one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the Claimant unable to perform his past relevant work; and (5) does the Claimant's age, education, and past work experience, in reference to the residual functional capacity, preclude him from doing other work. 20 C.F.R. § 416.920(b)-(f).

An affirmative answer at any step leads to either to the next step, or at the third and fifth step, to a finding that the Claimant is disabled. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984). Other than at step three, a negative answer leads to a determination that the Claimant is not disabled. *Id.* The Claimant has the burden of production and persuasion on steps one through four. *Tom v. Heckler*, 779 F.2d 1250, 1253 (7th Cir.1985); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984). However, if the Claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the Claimant—in light of his age, education, job experience and functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir.1997).

## VI. THE ALJ'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.

The Court finds substantial evidence in the record to support the ALJ's conclusion that Crosby was not disabled. Using the five-step process, the ALJ found that at the time of the hearing: (1) Crosby was unemployed; (2) Crosby had degenerative disc disease and chronic obstructive pulmonary disease; (3) Crosby's impairments did not meet or equal any of the listing of specified impairments; (4) Crosby was unable to perform his past relevant work; and (5) Crosby could perform a limited range of light and sedentary work and that Crosby was capable of making an adjustment to work which exists in significant numbers.

Crosby challenges the ALJ's decision on both legal and factual grounds. Crosby argues that the ALJ failed to develop a full record and ignored favorable evidence. The Court finds that the ALJ appropriately evaluated the medical evidence in the record, giving proper weight to all available evidence. Furthermore, Crosby argues that the ALJ's treatment of the residual functional assessments was inaccurate. The Court finds that the ALJ gave appropriate weight to the evidence and did not ignore evidence that supports an opposite conclusion. Finally, Crosby argues that the ALJ erred at step five in his determination that Crosby could successfully perform relevant jobs in the economy. The Court finds that the ALJ properly applied the testimony of the Vocational Expert and that the testimony supported the ALJ's ultimate findings.

### A. Substantial Evidence Support's the ALJ's Residual Functional Capacity and Credibility Findings.

#### 1. The ALJ Gave Appropriate Weight to Dr. Orfei's Medical Findings.

Dr. Orfei's examination and subsequent assessment provide substantial evi-

dence to support the ALJ's decision. Dr. Orfei saw Crosby on January 27, 1995 and again on February 22, 1995. Upon the first examination, Crosby was treated for lower back pain, evidenced by x-rays which demonstrated degeneration of discs at L3–4. At the time of Crosby's release from the hospital, Dr. Orfei limited Crosby from lifting no more than ten pounds pending the results of an MRI. Three weeks later, on February 22, 1995, Dr. Orfei evaluated Crosby again. At that time Dr. Orfei limited Crosby to lifting no more than 50 pounds pending the results of a scheduled MRI.

First, Crosby wrongly contends that the ALJ "seized upon a section" of Dr. Orfei's report to support the conclusion that Crosby could perform a limited range of light or sedentary work. Crosby mischaracterizes the ALJ's decision by quoting the ALJ's decision out of context. The ALJ stated that, "His treating physician stated the Claimant could lift up to 50 pounds." (A.R. at 14.) Yet, it is clear from the ALJ's decision that the ALJ did not adopt this fifty pound limitation when evaluating Crosby's ability to work. Indeed, the residual functional capacity finding restricted Crosby to a limited range of light and sedentary work. (A.R. at 14, 16.) If the ALJ had blindly accepted the fifty pound restriction, the ALJ would have limited the Plaintiff to medium work. *See* 20 C.F.R. §§ 404.1567, 416.967. It is clear that the ALJ did not find that Crosby could lift up to 50 pounds. The residual functional capacity finding incorporated a restriction to limited light and sedentary work. "Although the Claimant is unable to perform the full range of light or sedentary work, he is capable of making an adjustment to work which exists in significant numbers in the national economy." (A.R. at 16.)

Second, although the record does not provide any post-MRI evaluation of Crosby by Dr. Orfei, there is substantial medical evidence, taking into account the results of the MRI, to support the ALJ's findings. Indeed, the ALJ directly addressed the MRI of March 15, 1995. (A.R. at 13.) The ALJ specifically noted that

the MRI reveals disc degeneration at L3–4, an anterior disc bulge at the same level, as well as central and bilateral disc herniation. (A.R. at 13.) In addition, the ALJ also addressed the consulting physician's report of Dr. Cheema of April 28, 1995 which took into account the results of the MRI. (A.R. at 13.) Thus, the ALJ did not rely on incomplete medical reports to support his decision as suggested by Crosby.

Finally, the use of Dr. Orfei's reports, the findings of the MRI, and Dr. Cheema's evaluation does not demonstrate a "result oriented decision" that requires reversal. On the contrary, the decision made by ALJ was supported by substantial evidence. A remand to resolve the alleged "mistake" of Dr. Orfei would serve no purpose. Indeed, no principle of administrative law or common sense requires the Court to remand a case where there is no reason to believe that the remand would lead to a different result. *See Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989.)

### 2. The ALJ Relied on Objective Medical Evidence to Support the Residual Functional Capacity Findings.

The ALJ sufficiently discussed the medical evidence in reaching his conclusions regarding Crosby's limitations. The ALJ reviewed the reports of Dr. Orfei, Dr. Cheema, and the underlying medical findings. (A.R. at 11–15.) Crosby's assertion that the ALJ did not provide reasoning for his determination is misplaced. Rather, the ALJ fully and accurately discussed the medical reports and the medical evidence supporting those reports. Thus, the ALJ articulated his analysis of the evidence sufficiently to allow this Court to "trace the path of his reasoning." *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir.1995).

Crosby contends that the ALJ did not give sufficient weight to the MRI findings and that he failed to fully discuss Dr. Cheema's clinical findings. This contention is misplaced. The ALJ must weigh the available evidence. *Lauer v. Apfel,*

**936**

169 F.3d 489, 494 (7th Cir.1999). The Court finds that the ALJ appropriately evaluated all the evidence regarding Crosby's impairment. Although Crosby characterizes the ALJ's evaluation of the MRI as an "anticlimactic conclusion" to the review of the medical evidence, this does not dictate a finding that the ALJ ignored a line of evidence supporting an opposite conclusion. *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir.1984).

Rather, the objective medical records support the ALJ's assessment of Crosby's credibility and residual functional capacity. The ALJ rejected Crosby's claim of intractable pain based on the objective medical evidence in his determination of Crosby's residual functional capacity. 20 C.F.R. § 404.1520.(e). Further, the determination of Crosby's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527.(e)(2), 416.927(e)(2). The ALJ accommodated Crosby's allegations to the extent that they were supported by the record as a whole and such a finding is entitled to substantial deference and will not be disturbed unless patently wrong. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994).

**B. Substantial Evidence Supports the ALJ's Finding that a Significant Number of Jobs Available for an Individual with Crosby's Limitations.**

■ There is substantial evidence to support the ALJ's findings that there are a significant number of jobs in the national economy for which Crosby is qualified. Based on the residual capacity assessment predicated upon Dr. Orfei's examinations, Dr. Cheema's evaluations, and Crosby's age and educational level, the VE, Dr. William G. Fisher, found that Crosby had transferable skills and identified approximately 25,000 jobs which Claimant was capable of performing. These jobs include cashier (7,000), a surveillance system monitor (5,000), a machine operator (7,000), or as an entrance attendant or gate guard (6,000), all of which fall within the range of light to sedentary exertion level work.

(A.R. at 54–59.) In this assessment the ALJ expressly required the VE to take into account specific limitations particular to Crosby's residual functional capacity. (A.R. at 54.) Based on the VE's testimony, the ALJ found that there were a significant number of jobs available to Crosby. (A.R. at 15.) Even if this number was somewhat overstated, it clearly constitutes a significant number as a matter of law. *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir.1993). (1,400 job positions are a significant number).

**VII. CONCLUSION**

for the foregoing reasons, the Commissioner's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and the decision of the ALJ dated November 1, 1996 is affirmed.